LOCAL TRADEMARKS, INC., APPELLEE, *v.* DERROW MOTOR SALES, INC., APPELLANT.

(No. 239—Decided August 7, 1963.)

*Mr. Alner D. Ryan*, for appellee.
*Messrs. Shaw, Clemens, Williams & Hines*, for appellant.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Defiance Municipal Court, entered for the plaintiff, Local Trademarks, Inc., a New York corporation, pursuant to its motion for judgment made at the close of defendant's evidence. The action sounded in contract and was tried to the

court without a jury. The first four of defendant-appellant's assignments of error are closely related and involve the attempt of defendant to file an amended answer at the close of plaintiff's evidence to show that plaintiff had not complied with the laws of Ohio with reference to being authorized to do business in Ohio.

The contract on which the action is founded, except for specific terms of payment, provides:

"Ship f. o. b. New York by express or parcel post as soon as possible fifty two (52) mats size about 3 col. and reading matter, both as you think best, from the copyrighted Speedy series and (I) we hereby agree to pay you at New York, at the rate of twelve- - - -00/100 dollars per week, total six hundred twenty four- - - -00/100 dollars ($624-00/100), for (my) our right to use the above copyrighted matter for one year only from the first of the month following date of shipment in advertising the automobile business in newspapers and other media of Defiance state of Ohio only.

"" * * *

"It is agreed that, providing there shall be no default by (me) us you will not hereafter give any one else any right to use the above mats and reading matter in newspapers of or other media of said place, during said period, nor thereafter until you have offered by mail to sell (me) us at the same rate and terms stated above, the right to use additional mats and reading matter of the copyrighted series for the ensuing year.

" (I) we understand that (I) we shall arrange for publication in newspapers and other media and pay the cost of same, and that Local Trademarks, Inc., assumes no responsibility for cost or rate of publication.

"Neither party will be held responsible for any provisions or representations not embodied in writing herein, and this contract is not subject to cancellation.

"This agreement is subject to your acceptance at New York."

The evidence adduced is to the effect that this contract was signed by the defendant at its office at Defiance, after solicitation there by agents of the plaintiff, and it is recited in the contract that it was "accepted at New York" by the plaintiff's manager.

As the defendant seeks, by its amended answer, to show that the plaintiff was, as a foreign corporation, barred by the provisions of Section 1703.29, Revised Code, from maintaining its action in the courts of Ohio, the sole issue raised by the first four assignments of error is whether the ruling of the trial court, that "the motion to strike the defendant's answer is granted for the sole reason that the plaintiff is not one of those corporations which is required to register before doing business in the state of Ohio," constituted error prejudicial to the defendant.

The following are the pertinent provisions of the statutes involved:

Section 1703.29, Revised Code:

"(A) The failure of any corporation to obtain a license under Section 1703.01 to 1703.31, inclusive, of the Revised Code, does not affect the validity of any contract with such corporation, but no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license. * * *."

Section 1703.02, Revised Code:

"*Sections 1703.01 to 1703.31, inclusive, of the Revised Code do not apply to corporations engaged in this state solely in interstate commerce*, including the installation, demonstration, or repair of machinery or equipment sold by them in interstate commerce, by engineers, or by employees especially experienced as to such machinery or equipment, as part thereof; *to banks, trust companies, building and loan associations, title guarantee and trust companies, bond investment companies, and insurance companies; or to public utility companies engaged in this state in interstate commerce.*" (Emphasis added.)

There is no doubt that the trial court, in its ruling, had in mind the exception contained in Section 1703.02, Revised Code, and concluded that the plaintiff corporation was engaged in interstate commerce. The emphasized provisions of this section were first enacted in similar form in 1931 as Section 8625-3, General Code, and replaced analogous provisions of Section 188, General Code, theretofore existing. That part of the last-quoted statute not emphasized was added by amendment in 1951.

The defendant relies strongly on the case of *Clare & Foster,*

*Inc.*, v. *Diamond S. Electric Co.*, 66 Ohio App., 376, which at first appears analogous to the present case on its facts. However, a careful analysis of the court's opinion in that case shows that it is distinguishable both on the facts and on the law of the case. Although the contract therein involved is not set forth in detail, it would appear from the court's statement that title to the materials therein concerned was reserved to the plaintiff, and the court did not make any determination as to whether the plaintiff was *engaged in interstate commerce* but determined only that it "was doing business in Ohio." It will also be noted that the contract herein involved states, "ship f. o. b. New York by express or parcel post." In Bouvier's Law Dictionary, Rawle's Third Revision, f. o. b. is defined:

"Free on board. A term frequently inserted in contracts for the sale of goods to be conveyed by ship, signifying that the buyer will be responsible for the cost of shipment. * * *

"Its use extends to all carriers.

"*The ordinary effect is to pass title on delivery to the carrier* * * *." (Emphasis added.)

Moreover, the mere matter of title is not determinative. In *Short Films Syndicate, Inc.*, v. *Standard Film Service Co.*, 9 Ohio Law Abs., 730, a case where title certainly did not pass, the Court of Appeals for Cuyahoga County held that where a New York corporation leases motion picture films to an Ohio corporation, and the lessor does not engage to perform any duties in Ohio, but all its activities are confined to its New York office, the lessor is engaged in interstate commerce and is exempt from the provisions of Section 178, General Code. It is true that two months later two other judges of the same court arrived at a somewhat different conclusion in a case of the same title reported in 39 Ohio App., 79, and cited in *Clare & Foster, Inc.*, v. *Diamond S. Electric Co.*, *supra*, but their conclusion was based on the premise that the determination of what constitutes "doing business in this state" is a question of fact, that they could not say, "as a matter of law, that the finding of the trial court that plaintiff was doing business within this state has no basis in law; nor can we say that the conclusion reached by the trial court is manifestly against the weight of the evidence."

Although the author hereof is of the opinion that the sale of advertising mats (even when the use thereof is limited to

one year because of a copyright) is as much the sale of a commodity as would be the sale of a copyrighted book, or as would be the sale of the typographical plates which are produced from such mats, this again is not controlling. It is stated in 15 Corpus Juris Secundum, 279, Commerce, Section 18:

"Transactions of interstate commerce comprehend every negotiation, initiatory and intervening act, contract, trade, and dealing between citizens of any state or territory, or the District of Columbia, with those of another political division of the United States, which contemplates and causes an importation into the state, either of goods, of persons, or of information."

Again in 15 Corpus Juris Secundum, 316, Commerce, Section 31, it is stated:

"So, too, the sending through the mails from one state to another, according to contract, of information, advice, and prescriptions constitutes interstate commerce."

In this case we regard as controlling the decision of the Supreme Court of Ohio in *Toledo Commercial Co.* v. *Glen Manufacturing Co.* (1896), 55 Ohio St., 217, wherein the court held:

"The act of May 19, 1894 (91 Ohio Laws, 355-6), which provides 'that no foreign stock corporation, other than a banking and insurance corporation, shall do business in this state without first having procured from the secretary of state a certificate that it has complied with all the requirements of law to authorize it to do business in this state,' etc., and that no such 'corporation doing business in this state without such certificate, shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate,' etc., *does not apply to a foreign corporation whose business within the state consists merely of selling through traveling agents, and delivering goods manufactured outside of the state.*" (Emphasis added.)

It will be observed that there was not then under consideration a statute excepting corporations engaged in interstate commerce from the operation of the act, and the case was decided strictly on constitutional grounds. Judge Spear stated in his opinion at page 221:

"Whatever view might have been entertained, if the question with respect to interstate commerce were an open one, it is

now, as applied to facts like those in the case at bar, settled, that the attempt to forbid sales of this character is an interference with interstate commerce, and is beyond the power of the legislatures of the several states. The holdings are numerous that it is the right of persons and of corporations residing in one state to contract and sell their commodities in another, unrestrained except where restraint is justified under the police power. This rule does not deny the right of any state to impose conditions upon the power of foreign corporations to establish themselves within its boundaries for the performance generally of their business, involving the exercise of corporate franchises and powers, but does hold that the selling through traveling agents and delivering of goods manufactured outside of the state, does not fall directly within the purview of their corporate powers. The pertinent provision of the federal Constitution is that the 'citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states' and that instrument gives to Congress power 'to regulate commerce * * * among the several states.' The distinction to be noted is that the sale and delivery of merchandise is a right possessed in common by all the citizens of the state; the exercise of corporate franchises and powers, is not—it is a special privilege conferred only on corporations. And the sale and delivery in one state of goods manufactured in another state, by a citizen of that state, is interstate commerce. * * * The decisions of the Supreme Court of the United States are controlling. They forbid the exercise by the Legislature of the power claimed by the plaintiff in error, and hence its construction of the statute cannot be maintained, because it would result in a conflict upon a question, as to which question the authority of the general government is paramount to the governments of the states.''

There was other evidence before the trial court adduced at a hearing on August 22, 1962, which was not included in the bill of exceptions before this court which relates primarily to the hearing conducted on September 21, 1962. The defendant has made no proffer of any evidence which it proposed to submit under its amended answer except with relation to a certificate of the Secretary of State to the effect that plaintiff had not obtained a license to do business in the state of Ohio. We

therefore have no evidence before us to show that the character of plaintiff's operations was other than heretofore described, nor does the defendant claim otherwise, and we can only conclude, as did the trial court, that the plaintiff, in the transaction herein involved, was engaged in interstate commerce and was entitled to maintain its action in the Ohio courts without first obtaining a license to do business in the state of Ohio. Such being the case, the granting by the trial court of the motion to strike defendant's amended answer could not constitute error *prejudicial* to the defendant.

We have carefully examined defendant's other claims of error to the extent argued, and to the degree only by which same can be demonstrated by a partial bill of exceptions, and find that the trial court did not commit error prejudicial to the defendant in any of these other respects.

The judgment is affirmed at the costs of appellant.

*Judgment affirmed.*

MIDDLETON, P. J., concurs.

YOUNGER, J., dissenting. I must dissent from the opinion of the majority in this case upon two grounds and from the judgment.

The majority opinion holds that the case of *Clare & Foster, Inc.,* v. *Diamond S. Electric Co.,* 66 Ohio App., 376, "is distinguishable both on the facts and on the law of the case" from this case. With this I cannot agree. The statement of the court in its opinion that "The title to the articles remained in the plaintiff" is that court's conclusion from the words used in the contract. The words there used are, "for our right to use the above mats and copy for one year only." In the present case the words used are, "for our right to use the above copyrighted material for one year only." The only difference is that one uses the words, "mats and copy," and the other uses the words, "copyrighted material."

These two phrases—the heart of the contract in each case—are not differentiable.

The fact that the court in the *Clare & Foster case* did not make a forthright or specific holding that the plaintiff was en-

gaged in interstate commerce is neither important nor controlling. The only question before the court was whether the plaintiff was engaged in interstate commerce and therefore not required to obtain a certificate in order to do business in the state or whether it was engaged in doing business in Ohio under the statutes and therefore required to obtain a certificate to do so before being eligible to sue in the courts of the state. Therefore, the holding of the court that "This plaintiff was doing business in Ohio, was * * * it did not have capacity to maintain this action" is but another way of holding that the plaintiff was not engaged in interstate commerce and therefore was required to obtain a certificate.

I must further dissent from the majority opinion and from the judgment it reaches for the reason that, in my opinion, the transactions involved as specified in and contemplated by the contract are not interstate commerce and the plaintiff was not engaged in interstate commerce and therefore was not under the protection of such clause as used in the federal Constitution.

It is stated in 15 Corpus Juris Secundum, 281, Commerce, Section 19, as follows:

"The power of Congress to regulate interstate and foreign commerce embraces the right to control the contract power of a carrier, in so far as the public interest requires such limitation, and includes the power to legislate on the subject of private contracts which directly and substantially relate to such commerce, as, for instance, contracts which directly involve transportation from one state to another. On the other hand, contracts which in no way involve transportation are not in and of themselves any part of interstate commerce, and the fact that they are formed between persons in different states or negotiated in one state and consummated in another is immaterial. A contract is not of an interstate character where interstate commerce may become only incidental to its execution, and is not a part of it as between the parties to the contract. Whether a particular contract is interstate or intrastate in character must be determined by a construction of the contract rather than by a consideration of the manner in which it has been performed by the parties."

The Supreme Court of the United States in the case of *Blumenstock Bros. Advertising Agency* v. *Curtis Publishing Co.*, 252 U. S., 436, stated:

"Commerce, as defined in the often quoted definition of Chief Justice Marshall, in *Gibbons* v. *Ogden*, 9 Wheat. 1, 189 [6 L. Ed., 23], is not traffic alone; it is intercourse; 'It describes the commercial intercourse between nations, and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse.'

"In the present case, treating the allegations of the complaint as true, the subject matter dealt with was the making of contracts for the insertion of advertising matter in certain periodicals belonging to the defendant. It may be conceded that the circulation and distribution of such publications throughout the country would amount to interstate commerce, but the circulation of these periodicals did not depend upon or have any direct relation to the advertising contracts which the plaintiff offered and the defendant refused to receive except upon the terms stated in the declaration. The advertising contracts did not involve any movement of goods or merchandise in interstate commerce, or any transmission of intelligence in such commerce."

The Supreme Court of the United States has also held in its notable decision in the case of *A. L. A. Schechter Poultry Corp.* v. *United States*, 295 U. S., 495, at page 546, as follows:

"In determining how far the federal government may go in controlling intrastate transactions upon the ground that they 'affect' interstate commerce, there is a necessary and well-established distinction between direct and indirect effects. The precise line can be drawn only as individual cases arise, but the distinction is clear in principle. Direct effects are illustrated by the railroad cases we have cited, as, *e. g.*, the effect of failure to use prescribed safety appliances on railroads which are the highways of both interstate and intrastate commerce, injury to an employee engaged in interstate transportation by the negligence of an employee engaged in an intrastate movement, the fixing of rates for intrastate transportation which unjustly discriminate against interstate commerce. But where the effect of intrastate transactions upon interstate commerce is merely indirect, such transactions remain within the domain of state power. If the commerce clause were construed to reach all enterprises and transactions which could be said to have an indirect effect upon interstate commerce, the federal authority would embrace practically all the activities of the people and

the authority of the state over its domestic concerns would exist only by sufferance of the federal government. Indeed, on such a theory, even the development of the state's commercial facilities would be subject to federal control."

In my opinion, therefore, the judgment of the trial court should be reversed and the cause remanded, as under the contract sued upon no interstate commerce is involved, and plaintiff, being a foreign corporation transacting business in Ohio without a certificate authorizing it so to do, cannot maintain the present action. The action of the trial court striking the amended answer of the defendant, setting up this defense, was error prejudicial to the appellant.