GOLDEN DAWN FOODS, INC., APPELLANT, *v.* CEKUTA ET AL., APPELLEES.

[Cite as Golden Dawn Foods v. Cekuta, 1 Ohio App. 2d 464.]

(No. 1595—Decided July 20, 1964.)

*Messrs. Luchette & Hoffman,* for appellant.
*Messrs. Battin, Downey & McKay,* for appellees.

Jones, J. This case comes on for appeal from a judgment entry dated October 2, 1963, wherein defendants' motion for a directed verdict was sustained by the court and judgment entered thereon.

On March 22, 1962, the plaintiff corporation took cognovit judgment against the defendants on a note in the amount of $3,677.85, there being a confession by an attorney, the defendants not being served with summons.

The defendants filed a petition to vacate the judgment by separate action numbered 71781.

The cause came on to be heard on the petition to vacate, and, during the course thereof, it developed that the plaintiff in open court, through counsel, admitted it had taken judgment for more than was due, and the court ordered the judgment vacated, and the cause proceeded on the petition of plaintiff for judgment in case number 71671, and the answer which had been tendered thereto in case number 71781, the evidence already admitted under the petition to vacate being admitted in case number 71671 as having been introduced out of order.

At the conclusion of the plaintiff's presentation, defendants moved for judgment on the basis that the evidence showed that the plaintiff was a foreign corporation doing business in Ohio without having registered with the Secretary of State as provided by law, and, therefore, that it could not maintain an action in Ohio courts.

The court sustained that motion and, *sua sponte,* also held that the note in question was signed in a corporate capacity and not in an individual capacity, and rendered judgment for defendants.

The first issue to pass upon, as raised by assignment of error one, is whether Golden Dawn Foods, Inc., a foreign corporation, was doing business in the state of Ohio at the time suit was commenced. Since it is an agreed fact that Golden Dawn Foods, Inc., was a Pennsylvania corporation, not licensed to do business in Ohio, then, if this question is answered in the affirmative, they have no right to maintain an action in Ohio. This is so, as Section 1703.03, Revised Code, provides:

"No foreign corporation not excepted from Sections 1703.01 to 1703.31, inclusive, of the Revised Code, shall transact busi-

ness in this state unless it holds an unexpired and uncancelled license to do so issued by the Secretary of State. * * *."

Section 1703.29, Revised Code, provides:

"(A) The failure of any corporation to obtain a license under Sections 1703.01 to 1703.31, inclusive, of the Revised Code, does not affect the validity of any contract with such corporation, but no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license. * * *."

What constitutes a foreign corporation "doing business in state," is a fact question, and each case must rest on its own facts. *Short Films Syndicate Co., Inc.,* v. *Standard Film Service Co.,* 39 Ohio App. 79.

It is quite clear that Ohio requires a foreign nonprofit corporation to secure a license before exercising its corporate privileges and "a continual course of transactions" in Ohio. *Lyon* v. *Quality Courts United, Inc.,* 249 F. (2d) 790. This would hold true, also, of corporations for profit.

Was Golden Dawn Foods, Inc., doing business in the state of Ohio, pursuant to the law at the time suit was filed? From the state of the bill of exceptions, we think not. The only testimony is that Golden Dawn Foods, Inc., is a corporation organized and doing business under the laws of the commonwealth of Pennsylvania; that it is a wholesale grocery company which processes, buys, and sells foods and other products for sale on a wholesale basis to independent retail outlets; that it sells to some fifty stores in Ohio and about one hundred stores in Pennsylvania; that it owns no real estate in Ohio, nor is it the lessee or lessor of any property in Ohio; that its warehouses are all located in Pennsylvania; and that its salesmen are dispatched out of the Pennsylvania office.

Because of plaintiff's ownership of some stock in McVeigh store in Ohio, defendants claim that plaintiff is doing business in Ohio. The Gates and McVeigh Store, a corporation which has been operating in Warren, Ohio, for more than sixteen years, encountered financial difficulties. As a temporary arrangement during these difficulties, the Golden Dawn Foods Store, Inc., became an owner of a portion of the stock of Gates and McVeigh. The daily operation of the store was in the hands of Jack Gates and Stanley McVeigh. They controlled

the buying and selling policies of that store. It can hardly be said that ownership of stock of the corporation in Ohio would qualify such owner as doing business in the state of Ohio.

In addition to the Gates and McVeigh connection, defendant claims plaintiff engages in other activities in Ohio so as to qualify as doing business in Ohio. However, the testimony reveals simply a sale of goods and merchandise from the Golden Dawn Foods, Inc., to independent retailers in Ohio and Pennsylvania. Judge Vickery said in 33 Ohio App. 89, in the case of *National Sign Co.* v. *Maccar Cleveland Sales Co.,* at page 91, pertaining to the facts of that case:

"At first blush one would think it was simply the selling of material by a foreign corporation to be delivered in Ohio, and, if so, it would be only interstate commerce and would not be subject to the statutes of Ohio; * * *."

The state of the record indicates nothing more or less than sales of merchandise to Ohio outlets by Golden Dawn Foods, Inc. There is no mention in the record of advertising devices or services or other assistance given to the retail outlets in Ohio carrying the name, "Golden Dawn Foods." Thus, this case is distinguishable from the case of *Clare & Foster, Inc.,* v. *Diamond S. Electric Co.,* 66 Ohio App. 376, and others cited by counsel, wherein foreign corporations did more than sell and deliver merchandise to and in Ohio.

We, therefore, conclude that prior to and at the time of suit, Golden Dawn Foods, Inc., was engaged solely in interstate commerce and as such had the right to maintain suit in the state of Ohio. The first assignment of error is, therefore, well taken.

We come now to the question as to whether the Cekuta brothers signed the note in their capacity as corporation officers or individuals. This has been assigned as error number two.

Mutual Exhibit A certainly shows a cognovit note in the face amount of $4,000 payable on demand to Golden Dawn Foods. This note appears to be signed by William Cekuta and Edward Cekuta as individuals standing alone. There is no notation of their having signed in some representative capacity. It was admitted by counsel for defendants that the balance due on the note was $2,510.

We are quite in accord with 40 Ohio Jurisprudence (2d) 204, Section 247, wherein it is stated that:

"Where an instrument, on its face, is clearly the personal undertaking of the signer, no reference being made to a representative capacity, or where, on its face, it is unmistakably the understanding of a principal of the signer, parol evidence will not be received in the one case to exonerate, or in the other to charge the agent. Thus, it is a rule in Ohio that where the instrument itself contains nothing to indicate that it was signed in a representative capacity, parol evidence cannot be introduced to show that such was, in fact, the intent of the signer. * * *,,

See, also, *Titus* v. *Kyle,* 10 Ohio St. 445; *Collins* v. *Buckeye State Ins. Co.,* 17 Ohio St. 215, 93 Am. Dec. 612; *Robinson* v. *Kanawha Valley Bank,* 44 Ohio St. 441, 58 Am. Rep. 829; *Barnhisel* v. *Commercial National Bank,* 14 C. C. 124, 7 C. D. 533.

However, we must concur with the trial court that the instrument does not clearly show on its face that it was not signed by the makers in some form of a representative capacity. For this reason the trial court was justified in accepting parol evidence on this point.

Two witnesses testified. Mr. Rosenblum, a director and financial officer of Golden Dawn Foods, Inc., at first disclaimed any knowledge as to whether the note was signed in blank. Mr. Rosenblum stated that:

"Q. Handing you what has been marked as mutual exhibit A, can you identify that? A. Do you want me to state what this is?

"Q. Yes, that's the note for which judgment was taken in this case, for which we filed the petition? A. The note was turned in to our office, and then turned over to Attorney Routman, who is general counsel for our company.

"Q. Now looking at that note when that first came to your office is it a fact that it was blank? A. Oh I wouldn't be able to tell you that, I don't know that.

"Q. Who filled in the four thousand dollars? A. I can't tell you that, I wasn't present when it was filled in."

Later, however, in the trial he did testify that the note, other than the signatures, was no doubt filled in by Golden Dawn Foods, Inc. He did disclaim any knowledge as to whether or

not this note was listed as a claim in the Cekuta Brothers Food Market, Inc., bankruptcy action.

Mr. Francis Miller also testified. He was the executive vice president of Golden Dawn Foods as well as secretary of the corporation. There is no doubt that from his testimony we may conclude that the note was signed in blank.

The question remaining is: "Was the note filled in in accordance with the authority given pursuant to Revised Code Section 1303.43 (A-2)?"

The evidence concerning this matter was not such as to justify a finding, as a matter of law, that the note was not filled in in accordance with the authorization of the makers. See Section 1303.43 (A) (2), Revised Code. Granted that the testimony received came solely from plaintiff's witnesses and still was somewhat adverse to plaintiff's position, it was such that reasonable minds could reach different conclusions on the authority granted to fill in the note.

We refer to the familiar case of *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St. 469, wherein it is stated in the syllabus:

"3. Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. * * *.

"4. Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

Assignments of error numbered two and three are, therefore, well taken.

In accordance with the assignments of error, briefs, record, and bill of exceptions before us we conclude:

1. Golden Dawn Foods, Inc., was engaged in interstate commerce and had the right to bring this case before an Ohio Court of Common Pleas.

2. The testimony and exhibits did not qualify this case to fall within the rule of the *Hamden Lodge case.*

And, therefore, the motion for directed verdict should have been overruled and defendants required to proceed

further with evidence pertaining to the filling in of the blank portions of the note.

This case is remanded for further proceedings according to law.

*Judgment accordingly.*

BROWN, P. J., and FRANCE, J., concur.