CAPRA *v.* B.A. ASSOCIATES, LTD.

(No. 83 CVF 26431—Decided October 31, 1984.)

Cleveland Municipal Court.

*Richard J. Perez,* for plaintiff.
*Frank A. Dipiero,* for defendant.

ADRINE, J. This matter came on for trial on October 15, 1984. A jury, which had previously been requested, was waived. Testimony was taken relative to the plaintiff's complaint and the defendant's answer thereto, as well as relative to the defendant's counterclaim and plaintiff's response thereto. Following the hearing, the court took the matter under advisement and now issues its findings of fact and conclusions of law and renders judgment accordingly.

## Findings of Fact

1. The plaintiff is a professional painter doing business as Marino Capra Painting and Decorating Co.

2. The defendant is a corporate entity which, during the period under discussion here, owned, maintained and sold condominium units in the complex known as One Bratenahl Place in Bratenahl, Ohio.

3. The plaintiff worked for the defendant, first as the employee of another painter and then on his own, for over eight years.

4. The plaintiff has not worked for the defendant since his contract for the instant job was terminated in July 1983.

5. On or about July 1, 1983, the defendant contracted with the plaintiff to redecorate Suite 810, a three-bedroom unit at One Bratenahl Place.

6. The work was to be done in two phases and billed accordingly.

7. In the first phase, the plaintiff was to remove all existing wallpaper and mouldings, and plaster damaged areas as well as normal crack repairs.

8. For the completion of phase one the plaintiff was to be paid $2,750.

9. In the second phase, the plaintiff was to prime all new walls and apply two coats of paint in colors to be selected by the purchaser of Suite 810. Price for phase two was set at $2,600 and would have taken one week to complete.

10. The greater weight of the evidence establishes that the plaintiff performed the first phase of the job satisfactorily and was paid therefor on July 18, 1983.

11. Suite 105 at One Bratenahl Place was an unoccupied unit for many years.

12. Suite 105 was used for storage, as a source of spare parts and as a paint shop.

13. The greater weight of the evidence establishes that the use of Suite 105 as a paint shop, and much of the paint-related damage done therein, predated the plaintiff's use of the suite.

14. Problems developed because of the plaintiff's daily failure to abide by the defendant's regulations concerning

4

use of the loading area at One Bratenahl Place.

15. Plaintiff's refusal to follow the rules resulted in several potentially violent confrontations with the property's chief of security.

16. A number of the complaints received by the condominium association's general manager about the plaintiff involved racial slurs.

17. The complaints were forwarded to the defendant, which gave permission to bar the plaintiff from performing further work on its behalf.

18. Because of the ownership nature of the units, it was not possible for the defendant or the condominium association to prevent the plaintiff from coming onto the grounds to do work for an owner of an individual condominium unit.

19. The plaintiff did in fact perform work at One Bratenahl Place for individual owners after he was barred by the defendant. This work was performed without further incident.

20. Defendant's actions prevented the plaintiff from undertaking phase two in Suite 810.

21. Defendant did some preparation for painting.

22. Some of the plaintiff's equipment was in Suite 810 at the time he was barred by the defendant.

23. The plaintiff never recovered his equipment.

24. Although no direct evidence was presented at trial, the plaintiff valued his lost equipment at $500.

25. The defendant's evidence sharply contradicted the plaintiff's as to what was left in Suite 810.

26. The defendant hired Habit Construction Company to complete the work in Suite 810 at a cost of $2,320.

27. The defendant expended $2,665.45 to repair the damage in Suite 105.

28. The plaintiff purchased all paint and materials to redecorate Suite 810.

29. The plaintiff hired a helper to remove the wallpaper and to prepare the walls in Suite 810 for painting.

30. The defendant gave the plaintiff no direction as to the completion of the job in Suite 810 nor did it exercise any supervision thereover.

31. While the defendant provided the plaintiff with his primary source of income during the period in question, it was not his sole employer.

Conclusions of Law

I

The major issue to be resolved in the present dispute is the relationship of the parties. The plaintiff maintains that he was an independent contractor. The defendant, on the other hand, says that the plaintiff was an employee. In this regard, the burden of proof is on the claimant to prove employment status. *Indus. Comm.* v. *Laird* (1933), 126 Ohio St. 617.

*Laird* is the leading case in this area of the law in Ohio. The Ohio Supreme Court said in *Laird* at 619:

"The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is exercised by the employer. As a general proposition, if the workman is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. The ultimate question is not whether the employer actually exercises such control, but whether he has the right to control."

The court went on to say at 620:

"There are many facts and circumstances to be considered in distinguishing between the servant and an independent contractor, such as furnishing of workmen and appliances, mode and time of payment, power to terminate the contract, and the nature of the workman's occupation or calling. But all relate back to the 'vital test,' the control over the work."

Another Ohio court has held:

"The term 'independent contractor' presupposes the existence of a binding contract between the parties, for a breach of which a cause of action arises. There can be no relationship of 'independent contractor' without the existence of such binding contract between the parties.* * *" *Snodgrass* v. *Cleveland Co-op. Coal Co.* (1929), 31 Ohio App. 470.

Applying these precepts to the case at bar, it is clear that the plaintiff was, in fact, an independent contractor. Although on the defendant's premises almost daily, his work assignments resulted from offers to paint designated suites in the buildings. The offers were transmitted to the defendant's on-site managers. If the offers were approved, purchase orders were issued to the plaintiff for the work to be performed. The plaintiff hired additional workmen as he deemed necessary, purchased his own tools as well as the paint to be used, and performed the work according to his own perception of the best methodology for getting the job done. Once the purchase orders were issued, the defendant's only concerns were with the results. See *Snodgrass, supra,* at 477-478. Having established the plaintiff's status as an independent contractor, the court turns now to examine the defendant's actions which barred the plaintiff from doing any further work for the defendant. Those actions prevented the plaintiff's completion of his contractual obligation to the defendant and effectively terminated the contract. The defendant's purported exercise of the power to terminate the plaintiff's contract was incompatible with the plaintiff's status as an independent contractor and in reality constituted a breach of that contract.

At no point during the trial of this matter was it ever alleged or proven that the plaintiff was on the defendant's payroll, that defendant provided the plaintiff either detailed or general work rules to follow, or that the defendant specifically reserved to itself the right to unilaterally terminate the contract which underlies this cause. Instead, the defendant urges on the court the plaintiff's common-law obligations to his employer.

These so-called common-law obligations, however, are rooted in the defendant's misapprehension of its relationship with the plaintiff. These parties, being bound by contract, are required only to discharge those obligations which are imposed on them by the contract. Therefore, as reprehensible and repugnant as the plaintiff's conduct was, the defendant was not justified in preventing him from completing the contract.

In *Kinney* v. *Pocock* (1908), 8 Ohio N. P. (N.S.) 121, the Court of Common Pleas of Cuyahoga County held:

"The principle of law * * * is aptly stated in *Taylor* v. *Risley,* 28 Hun. (N.Y.), 141:

" ' The law will not permit a party who has become entitled to the performance of an agreement by another to intervene so as to prevent such performance being made, and then, on the basis of such failure, to claim damages against the party because of his omission to perform his agreement.' " *Id.* at 130.

The court went on to say at 134:

"* * * [A]n act not violative of any contract provision can not be a wrongful interference with the performance of the contract unless it is unlawful in the sense of being in excess of one's legal rights. In other words, an act not wrongful in and of itself and not in violation of the terms of the contract express or implied, furnishes no excuse for its non-performance even though such act may embarrass performance by the other party. As to what constitutes an unlawful act in this relation the authorities are not in accord. Some hold that an act otherwise innocent becomes wrongful when done with a purpose to

cause the other party to default in performing the contract, if damage results. Others deny that the motive can give character to the act. As said in *Jenkins* v. *Fowler,* 24 Pa. St., 308:

" 'Malicious motives make a bad case worse, but they can not make that wrong which in its own essence is lawful.'

"The court inclines to the latter view * * *."

The *Kinney* decision at 132 also quotes the following language from the dissent in *Taylor, supra,* which has applicability here:

" 'But mere misbehavior on the part of the plaintiff, and censurable conduct, not wrongful and actionable in the eyes of the law, and which among fair-minded men is regarded as an interference in the business of others, exhibiting ill-feeling and indicating an unfriendly spirit, can not be inquired into, and made an excuse for the non-performance of the engagements of the contracting party so disturbed and annoyed.' "

Accordingly, the defendant's claim for damages to recoup the cost of having to hire another contractor to complete phase two of the contract must fail and the plaintiff's entitlement to the benefit of his bargain is established.

## II

The question of damages still remains for determination. The plaintiff maintains that in addition to the contract price for phase two of the redecorating of Suite 810, he is also entitled to recompense for lost materials which came up missing during the period when he was barred from the suite and which he has never recovered. Although he estimated that the materials were worth $500, testimony presented by the defense sharply and credibly disputed that assessment. No bills, receipts, inventories or other indicia were placed before the court to corroborate the plaintiff's estimate. Therefore, the court concludes that it can not properly ascertain the plaintiff's damage by loss of these materials and that only an award of nominal damages is appropriate.

The defendant suggests that the plaintiff's damages for the breach of their contract should be reduced by any amount that he earned or could have earned by observing his duty to seek other employment. Testimony presented at trial reflected that it would have taken the defendant a week to complete the work on Suite 810. It also reflected that the plaintiff did not work during the week immediately following his being barred by the defendant. There also was no evidence that the plaintiff made any attempt to obtain work during that period.

The court does not believe that the plaintiff, under the circumstances of this case, was required to seek employment. He is entitled to the full amount contracted for. Again, the defendant erroneously has relied on its characterization of the plaintiff's status as an employee rather than independent contractor.

With regard to the second branch of the defendant's counterclaim, it is clear, and the plaintiff admits, that some of the damage done in Suite 105 was the responsibility of the plaintiff. However, it is equally clear that the damage to the suite was not totally, or even substantially, shown to have been done by the plaintiff. From the evidence the court was unable to ascertain and apportion the amount of the damage which could be attributed to the plaintiff. Therefore, as with the plaintiff's claim for his materials, the court feels that only nominal damages are appropriate.

Judgment for the plaintiff and against the defendant on count one of the complaint in the amount of $2,600 plus costs and statutory interest from October 31, 1983.

Judgment for the plaintiff and against the defendant on count two of the complaint in the amount of $1.

Judgment for the plaintiff and against the defendant on count one of the counterclaim.

Judgment for the defendant and against the plaintiff on count two of the counterclaim in the amount of $1 plus costs.

*Judgment accordingly.*