**Dot Systems**
v.
**Adams Robinson Enterprises**
*[Cite as 2 AOA 213]*

*Case No. 1897*
*Lawrence County, (4th)*
*Decided April 27, 1990*

R.C. 1703.02
R.C. 1703.03
R.C. 1703.29
Civ. R. 9(A)
Civ. R. 12(H)

Allen & Payne, Mr. Craig A. Allen, Ironton, Ohio, for Appellant.

Pickrel, Schaeffer & Ebeling, Mr. John W. Slagle and Mr. Andrew C. Storar, Dayton, Ohio, for Appellee Adams Robinson Enterprises, Inc.

HARSHA, J.,

This is an appeal from a judgment entered by the Lawrence County Court of Common Pleas granting the motion for summary judgment of Adams Robinson Enterprises, Inc., defendant-appellee, and dismissing the complaint of Dot Systems, Inc., plaintiff-appellant which had alleged, *inter alia*, that appellee had been guilty of breach of contract.

Appellant assigns the following errors:

I. THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE PLAINTIFF DID NOT HAVE STANDING TO BRING AN ACTION IN AN OHIO COURT.

II. THE COURT ERRED IN ITS DETERMINATION THAT THE DEFENDANT, ADAMS ROBINSON ENTERPRISES, INC., COULD UNILATERALLY TERMINATE PLAINTIFF'S SUBCONTRACTOR'S AGREEMENT.

On December 5, 1985, appellant filed a complaint which named appellee as defendant and which averred, in pertinent part, as follows. Appellant is a corporation duly organized under the laws of the Commonwealth of Kentucky and is authorized to do business in Ohio. On June 17, 1985, appellant entered into a subcontract to perform certain concrete work upon the Union-Rome Township Sewer District in Lawrence County, Ohio wherein Adams-Robinson Construction Company was the general contractor. Appellee failed to pay appellant $227,243, i.e. the agreed upon contract price.

Appellant's complaint further averred that appellee had engaged in an intentional plan to interfere with the successful operation of appellee's business, that it had a prevailing wage claim against appellee, and, finally, that appellee had given appellant a bad check. On March 7, 1986, appellee filed an answer which generally denied the allegations of appellant's

complaint. Appellee subsequently filed third party complaints against several other parties as well as a counterclaim against appellant.

On November 1, 1988, appellant filed answers to interrogatories wherein it stated that it was incorporated in Kentucky on July 16, 1973, that it was not incorporated in Ohio, and that it was not licensed to do business in Ohio as a foreign corporation. On January 9, 1989, appellee filed a motion for summary judgment with regard to appellant's complaint. On January 12, 1989, the parties herein stipulated to the accuracy of the June 5, 1985 subcontract agreement. This subcontract agreement specified that appellee, as general contractor, had entered into a contract with Lawrence County, Ohio for the construction of a wastewater treatment plant to be constructed in Chesapeake, Ohio. Pursuant to the subcontract agreement, appellant agreed to perform a portion of the contracted job. Additionally, the subcontract agreement provided, in pertinent part, as follows:

"32. Notwithstanding any other provision in this Subcontract Agreement to the contrary, the General Contractor reserves the right to terminate the Subcontractor's Agreement as determined by the General Contractor's sole and absolute discretion."

On February 1, 1989, the trial court issued a decision which granted appellee's motion for summary judgment on the basis that appellant lacked standing to bring an action in an Ohio court and that a contract provision allowed appellee to unilaterally terminate the subcontractor's agreement. On February 16, 1989, the trial court filed an entry which reflected its February 1, 1989 decision. The trial court's entry included the express finding that there was "no just reason for delay in granting Summary Judgment unto Adams-Robinson Enterprises, Inc. and that this is a final appealable Order."[1]

Appellant's first assignment of error asserts that the trial court erred when it determined that appellant did not have standing to bring an action in an Ohio court. Civ. R. 56(C) provides, in pertinent part, as follows:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Bostic v. Connor* (1988), 37 Ohio St. 3d 144, 146; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66.

The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment. *Harless, supra,* at p. 66. Accordingly, the moving party must state specifically which areas of the opponent's claim raise no genuine issue of material fact and such assertion may be supported by affidavits or otherwise as allowed by Civ. R. 56(C). *Mitseff v. Wheeler* (1988), 38 Ohio St. 3d 112, 115. As noted previously, one of the two grounds for the trial court's entry of summary judgment in favor of appellee herein was that appellant lacked standing to bring an action in Ohio pursuant to R.C. 1703.29(A). Appellee supported its motion for summary judgment in this respect with the answers by Carolyn Gibbons, the sole shareholder, director, and officer of appellant, to appellee's interrogatories wherein appellant admitted that it was a Kentucky corporation that was not licensed to do business in Ohio as a foreign corporation.

R.C. 1703.29 provides, in pertinent part, as follows:

"(A) The failure of any corporation to obtain a license under sections 1703.01 to 1703.31, inclusive, of the Revised Code, does not affect the validity of any contract with such corporation, but *no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license ***."* (Emphasis added).

In that appellee supported its motion for summary judgment with appropriate Civ. R. 56(C) evidentiary material, appellant was not entitled to rest upon the mere allegation in its complaint that it was "authorized to do business" in Ohio. Civ. R. 56(E); *Mitseff, supra* at p. 115. In the case at bar, the pertinent evidence was uncontroverted that appellant had failed to obtain a license required by R.C. 1703.03, and, therefore, unless an exception applied to R.C. 1703.29(A), appellant did not have standing to bring the instant action.

R.C. 1703.03 provides that a foreign corporation, that is, a corporation incorporated under the laws of another state, shall not transact business in Ohio until it obtains a license to do so. *Contel Credit Corp. v. Tiger, Inc.* (1987), 36 Ohio App. 3d 71, 73. As a penalty for transacting business in Ohio without a license, foreign corporations are precluded under R.C. 1703.29 from maintaining a cause of action in any court in Ohio. *Colegrove v. Handler* (1986), 34 Ohio App. 3d 142, 145. However, R.C. 1703.02 exempts from the licensing requirements of R.C. 1703.03 foreign corporations "engaged in this state solely in interstate commerce." Appellant contends that there remains a genuine issue of material fact as to whether it is engaged in Ohio "solely in interstate commerce," which would allow it to bring the action herein despite its failure to obtain a license to do business in Ohio.

The term "interstate commerce" is not defined in R.C. Chapter 1703. Words and phrases which are undefined in the Revised Code shall be read in context and construed according to the rules of grammar and common usage. R.C. 1.42; *Radcliffe v. Artromick Internatl., Inc.* (1987), 31 Ohio St. 3d 40, 42. "Interstate commerce" is broadly defined as commerce between a point in one state and a point in another state, between points in the same state through another state or through a foreign country, between points in a foreign county or countries through the United States, and commerce between a point in the United States and a point in a foreign country or in a territory or possession of the United States, but only insofar as such commerce takes place in the United States. Black's Law Dictionary (5th Ed. 1979), p. 735. The determination of whether a corporation engages *solely* in interstate commerce and is thus exempt from a state's licensing requirements is largely factual, dependent upon the totality of the relevant circumstances surrounding the corporation's business operations. *Contel, supra* at p. 73; *Golden Dawn Foods, Inc. v. Cekuta* (1964), 1 Ohio App. 2d 464, 466. A foreign corporation engages solely in interstate commerce when its business within Ohio consists merely of selling and delivering through traveling agents, goods manufactured outside of the state. *Local Trademarks, Inc. v. Derrow Motor Sales, Inc.* (1963), 120 Ohio App. 103; *McClarran v. Longdin-Brugger Co.* (1926), 24 Ohio App. 434; *Golden Dawn Foods, Inc., supra.*

However, it is recognized that a foreign corporation engages in business within a state, and hence is not engaged "solely" in interstate commerce, when it has entered the state by its agents and is there engaged in carrying on and transacting through them some substantial part of its ordinary or customary business, usually continuous in the sense that it may be distinguished from merely casual, sporadic, or occasional transactions and isolated acts. *Contel, supra* at p. 73; 36 American Jurisprudence 2d (1968) 312, 314-315, Foreign Corporations, Section 317. When a foreign corporation engages in business in a state, that corporation may be appropriately subjected to the laws of the state imposing conditions or restrictions upon its doing business within the limits of such state. R.C. 1703.29; *Contel, supra;* 36 American Jurisprudence 2d (1968) 255, Foreign Corporations, Section 251. In the case at bar, appellant's complaint indicates that the subcontract at issue was for it to "perform certain concrete work" at the Ohio work site. The contract involved the construction of a waste water treatment plant to be constructed in Chesapeake, Ohio. Accordingly, we are persuaded that after construing the evidence most strongly in favor of appellant, reasonable minds could reach only the conclusion that appellant was not engaged "solely" in interstate commerce where the subcontract therein involved the carrying on and transacting of a substantial part of its ordinary or customary business in Ohio, i.e. the evidence was uncontradicted that such performance of the subcontract by appellant in Ohio was not a casual, sporadic, or occasional transaction or isolated act such as those specified in *Local Trademarks, Inc., McClarran,* and *Golden Dawn Foods, Inc., supra.*

However, although appellant fails to raise such issue on appeal and arguably allowed the court below to consider the standing issue with its consent, cf., e.g. *Millar v. Bowman* (1983), 13 Ohio App. 3d 204, Civ. R. 9(A) provides, in pertinent part, as follows:

"It is not necessary to aver the capacity of a party to sue... When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued... he shall do so by *specific negative averment,* which shall include such supporting particulars as are peculiarly within the pleader's knowledge." (Emphasis added).

Accordingly, if capacity to sue is not raised by specific negative averment under Civ. R. 9(A), it will be waived under Civ. R. 12(H). See Staff Notes to Civ. R. 9(A); *Gove Associates, Inc. v. Thomas* (1977), 59 Ohio App. 2d 144, 145. Similarly, if a party does not raise, by way of a defense, the absence of a license for a foreign corporation to do business in Ohio, the issue is waived. 4 Anderson, Ohio Civil Practice (1989) 288, Section 151.10; *S & S Chopper Service v. Scripter* (1977), 59 Ohio App. 2d 311, 315. In that appellee's answer failed to raise "by specific negative averment" appellant's lack of capacity to bring suit in Ohio and it further failed to raise this issue by any amended answer, it waived this defense pursuant to Civ. R. 12(H) and the trial court erred in utilizing R.C. 1703.02 as one of its grounds in granting appellee's motion for summary judgment. However, in that the trial court's alternative ground for the entry of summary judgment was proper pursuant to our disposition of appellant's second assignment of error, *infra,* any error in this regard was not prejudicial. Appellant's first assignment of error is overruled.

Appellant's second assignment of error asserts that the trial court erred in its determination that appellee could unilaterally terminate appellant's subcontractor's agreement. Appellant contends that the trial court erroneously determined that the parties herein had an employer-employee relationship rather than an employer-independent contractor relationship and that such error precluded the trial court from using the employment at-will doctrine. Employment contracts of an indefinite duration are terminable at will by either party for any cause, at any time whatsoever, even if done in gross or reckless disregard of an employee's rights. *Phung v. Waste Management, Inc.* (1986), 23 Ohio St. 3d 100; *Peterson v. Scott Construction Co.* (1982), 5 Ohio App. 3d 203. If the parties so choose, they are free to enter into an employment contract which is not at-will; however, in the absence of facts and circumstances to the contrary, an Ohio employment agreement will be presumed to be at-will. *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App. 3d 220. The vital test in determining whether a person employed to do certain work as an independent contractor or a mere employee is the control over the work which is exercised by the employer. *Capra v. B.A. Associates, Ltd.* (1984), 27 Ohio Misc. 2d 2. Appellant argues that since it was an independent contractor, its contract with appellee could not be terminated in an employment at-will fashion. This argument is misplaced in that, regardless of whether or not appellant was an independent contractor or a mere employee, the contract contains a provision which grants to appellee the power to terminate the contract in its "sole and absolute discretion." The interpretation of a written contract is a question of law, not of fact, for the court. *Boundy v. Arnold Haviland Co.* (1986), 33 Ohio App. 3d 156; *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241. Here, in that the express contractual provision allowed appellee the unilateral power to terminate the contract,[2] summary judgment was properly granted. Accordingly, for all of the foregoing reasons, appellant's second assignment of error is overruled, and the judgment of the court below is affirmed. It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas, to carry this judgment into execution. Any Stay previously granted by this Court is hereby terminated as of the date of filing of this Entry.

*Judgment affirmed.*

STEPHENSON, J., ABELE, J., Concur.

---

[1] An order of a court is a final, appealable order only if the requirements of both Civ. R. 54(B), if applicable, and R.C. 2505.02 are met. *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St. 3d 86, syllabus. An order which adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 and Civ. R. 54(B) in order to be final and appealable. *Noble v. Colwell* (1989), 44 Ohio St. 3d 92, syllabus. An order fully adjudicating a claim and accompanied by a Civ. R. 54(B) determination and direction is final and appealable despite the fact that a counterclaim remains pending. *Id.* at p. 95. Based upon the aforementioned authorities, it is readily apparent that the entry appealed from was a final, appealable order. Indeed, neither party suggests otherwise.

[2] The contractual provision did not limit appellee's termination power to merely its "sound discretion," which would have arguably prohibited any termination by appellee that amounted to an abuse of discretion.