**AUTO DRIVEAWAY CO., Plaintiff,**

v.

**AUTO LOGISTICS OF COLUMBUS, et al., Defendants.**

**No. C2–98–285.**

United States District Court, S.D. Ohio, Eastern Division.

June 9, 1999.

---

Leslie A. Yovan, Porter Wright Morris & Arthur, Columbus, OH, for plaintiff.

Timothy J. Boone, Columbus, OH, for defendants.

### OPINION & ORDER

MARBLEY, Judge.

This cause comes before the Court on Defendants' Motion to Dismiss or Stay Proceedings for Plaintiff's Failure to Comply with Ohio Rev.Code § 1703.03. For the following reasons, this Motion is **GRANTED**. This action is **STAYED** until Plaintiff conforms to the dictates § 1703.03.

### I.

Plaintiff Auto Driveaway Co. ("Plaintiff") is a vehicle delivery service operating through company offices as well as offices of independent Auto Driveaway agents in the United States and Canada. Under the Auto Driveaway system, individual and commercial customers seeking to move cars, trucks and other vehicles from city to city place orders with Auto Driveaway agents who then make the requested transfers. Auto Driveaway agents charge customers tariffs for all vehicles they deliver; the tariff is determined by federal law and depends on the type of transfer chosen by the customer.

Plaintiff provides its agents access to a network of other Auto Driveaway agents in the U.S. and Canada. For example, when an Auto Driveaway agent takes an order to move a vehicle that is not located within the agent's operating territory, the agent may call upon the Auto Driveaway agent nearest the vehicle to make the shipment. Such shipments are called "split-fee" shipments

because the booking agent and the shipping agent split the fee paid by the customer according to a fixed percentage. In exchange for their participation in the Auto Driveaway system, agents must pay Plaintiff home office fees for each shipment they make.

In Ohio, Plaintiff operates its vehicle transportation service through three independent agents, located in Columbus, Cleveland and Cincinnati. From April 13, 1982 through February 12, 1997, Defendants Auto Logistics of Columbus, Inc., an Ohio corporation, William R. Huber, Jr., and William A. Huber, Sr. ("Defendants") operated an independent Auto Driveaway agency in Columbus, Ohio. Plaintiff terminated Defendants' agency on February 12, 1997.

On March 17, 1998, Plaintiff filed this suit alleging that Defendants failed to pay all home office fees and misrepresented the amount of home office fees due to Plaintiff. Now, Defendants move to dismiss or stay these proceedings for Plaintiff's failure to comply with Ohio Rev.Code § 1703.03.

## II.

Ohio Revised Code § 1703.03 requires that all companies transacting business in Ohio hold a license to do so. The statute states:

No foreign corporation not excepted from sections 1703.01 to 1703.31, inclusive, of the Revised Code, shall transact business in this state unless it holds an unexpired and uncanceled license to do so issued by the secretary of state. To procure and maintain such a license, a foreign corporation shall file an application, pay a filing fee, file annual reports, pay a license fee in initial and additional installments, and comply with all other requirements of law respecting the maintenance of such license as provided in such sections.

Ohio Rev.Code § 1703.03. While an unlicensed foreign corporation may enter into valid contracts, it cannot maintain any court action until it obtains a license to transact business in the State of Ohio. Ohio Revised Code § 1703.29(A) provides this enforcement mechanism for § 1703.03 by stating:

The failure of any corporation to obtain a license under section 1703.01 to 1703.31, inclusive, of the Revised Code, does not affect the validity of any contract with such corporation, but no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained a license. Before any such corporation shall maintain such action on any cause of action arising at the time when it was not license to transact business in this state, it shall pay the secretary of state a forfeiture of two hundred fifty dollars and file in this office the papers required by divisions (B) or (C) of this section, whichever is applicable.

Ohio Rev.Code § 1703.29. Corporations engaged solely in interstate commerce, however, are excepted from the licensing requirements of § 1703.03. *See* Ohio Rev.Code § 1703.02. Defendants contend that Plaintiff was and is doing business in Ohio and failed to become licensed pursuant to § 1703.03, and that Plaintiff therefore lacks the standing to bring suit pursuant to § 1703.29(A).

Plaintiff states in its Complaint that it is a Delaware corporation with its principal place of business in Chicago, Illinois. As a corporation incorporated under the laws of another state, Plaintiff is deemed a "foreign corporation" for the purposes of Ohio's business licensing statute. *See* Ohio Rev.Code § 1703.01(B). Plaintiff does not dispute its "foreign" status, but argues that its Ohio operations deal solely in interstate commerce and thus are exempt from Ohio's licensing requirements, pursuant to § 1703.02.

 Whether a corporation engages solely in interstate commerce so that it is exempt from Ohio's licensing requirements is largely a factual determination, dependent upon the totality of the relevant circumstances surrounding the corporation's business operations. *See Dot Systems, Inc. v. Adams Robinson Enterprises, Inc.*, 67 Ohio App.3d 475, 480, 587 N.E.2d 844; *Contel Credit Corp. v. Tiger, Inc.*, 36 Ohio App.3d 71, 73, 520 N.E.2d 1385 (1987). A foreign corporation engages solely in interstate commerce when its business within Ohio consists merely of selling and delivering through traveling agents goods manufactured outside

of the state. *See Dot Systems,* 67 Ohio App.3d at 480, 587 N.E.2d 844. It is well-recognized, however, that a foreign corporation transacts business within a state when "it has entered the state by its agents and is there engaged in carrying on and transacting through them some substantial part of its ordinary or customary business, usually continuous in the sense that it may be distinguished from merely casual, sporadic, or occasional transactions and isolated acts." *Id.* at 481, 587 N.E.2d 844. *See also Cocon, Inc. v. Botnick Bldg. Co.,* 59 Ohio App.3d 42, 43, 570 N.E.2d 303 (1989); *Contel,* 36 Ohio App.3d at 73, 520 N.E.2d 1385; *Acton Sell Assoc. v. St. Vincent Med. Ctr.,* 63 Ohio Misc.2d 404, 406, 631 N.E.2d 181 (1992).

■ The question before this Court, therefore, is whether Plaintiff's operations in Ohio are substantial, ordinary and customary enough to qualify as conducting business in the state, or whether they are casual, sporadic, or isolated acts, placing them in the category of "interstate commerce." A close examination of the affidavit of Brandon Sohl, Auto Driveaway's president, reveals that Plaintiff's Ohio activities fall into the former category. In his affidavit, Mr. Sohl states: that Auto Driveaway operates its vehicle transportation service through three independent agents located in Columbus, Cleveland and Cincinnati; that such agents are treated as independent contractors for tax purposes; that Plaintiff offers its agents access to a network of other Auto Driveaway agents and insures each of its agents for all transfers made; that agents must pay Plaintiff home office fees for each shipment they make; that Plaintiff places a Yellow Pages advertisement in each agent's city, and such advertisements are paid for by the agents in that city; that Plaintiff does not own any property or have any employees in Ohio; and that Plaintiff's Ohio agents make five to ten percent of their transfers intrastate.

Mr. Sohl's affidavit illustrates that Plaintiff's operations are not analogous to a company which merely ships goods into a state in response to orders received. Rather, Plaintiff has engaged in the regular, continuous, and lengthy occupation of recruiting and sending business to its agents in Ohio. Such recruitment occurs on many levels, not only through its placement of standardized advertisements around the country and in its agents' local Yellow Pages, but also by Plaintiff's "network" of agents and "split-fee arrangements." Plaintiff's national framework virtually guarantees that many of its own company agents will recruit and send business to its independent Ohio agents. Active recruitment of business within a state designates a corporation as "doing business" within that state. *See Manhattan Terrazzo Brass Strip Co., v. A. Benzing & Sons,* 72 Ohio App. 116, 123–127, 50 N.E.2d 570 (1943). Further, Plaintiff receives regular and substantial sums of money from these Ohio transactions via its required home-office fees. And, by Plaintiff's own admission, as much as ten percent of its Ohio transfers are purely intrastate.

It is clear from the totality of the circumstances that Plaintiff is "doing business" in Ohio. Its operations meet the traditional definition of entering the state by its agents and continuously conducting through them some substantial part of its ordinary or customary business. Plaintiff recruits business on behalf of, is paid fees by, and insures its independent agents. Plaintiff, therefore, is not merely performing interstate commerce in Ohio, but is transacting business in the state for the purposes of Ohio Rev.Code § 1703.03.

■ As an unlicensed corporation which does business in Ohio and which is not entitled to any exemption, Plaintiff is precluded, pursuant to § 1703.29, from maintaining a cause of action in Ohio. The Court will not, however, dismiss this case. Rather, the Court assumes Plaintiff will eventually get its day in court, and dismissing the case now would merely prolong and add considerable costs to this litigation. In the interest of judicial economy, therefore, this action is **NOT DISMISSED** but is **STAYED** until Plaintiff complies with the dictates of Ohio Rev.Code § 1703.03.

**IT IS SO ORDERED.**