**Dale M. WINNINGHAM, Plaintiff,**

v.

**NORTH AMERICAN RESOURCES, et al., Defendants.**

No. C–1–91–447.

United States District Court, S.D. Ohio, W.D.

Oct. 29, 1992.

James Burdette Helmer, Jr., Helmer, Lugbill & Whitman Co., LPA, Cincinnati, OH, Meredith Lynn Lawrence, Lawrence & Schletker, Covington, KY, for Dale Winningham.

Arthur Herbert Schlemmer, Barron, Peck & Bennie, John Charles Scott, Faulkner & Tepe, Cincinnati, OH, for North American Resources Corp.

Philip John Marsick, Jr., McCaslin, Imbus & McCaslin, Cincinnati, OH, for I Deutch & Sons Inc.

Todd Matthew Powers, Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, for Mose Cohen & Sons, Inc.

Frederick Mason Morgan, Jr., Montgomery, Rennie & Jonson, Cincinnati, for Insurance Co. of North America.

## ORDER CONCERNING POST–TRIAL MOTIONS AND MODIFYING THE JUDGMENT

SPIEGEL, District Judge.

The Court held a lengthy jury trial in this case in June 1992. The jury found that all the Defendants had acted negligently. Specifically, the jury determined that the percentage of negligence attributable to North American Resources ("NARC") was 84%; the percentage of negligence attributable to Mose Cohen & Sons, Inc. ("Mose Cohen") and/or I. Deutch & Sons, Inc. ("I. Deutch") doing business as the partnership of Cincinnati Autoshredders ("CAS") was 16%; and, the Plaintiff's own negligence was 0%.

The jury further found that the total damages suffered by the Plaintiff was $1,925,000, of which $390,000 constituted past and future lost wages, $335,000 represented past and future medical care, and $1,200,000 constituted non-economic damages for pain and suffering, mental anguish, loss of enjoyment of life, loss of normal physical function, and disfigurement. As a result of the jury's findings, the Court entered Judgment on June 30, 1992 (doc. 220).

Subsequently, both parties filed numerous post-trial motions with the Court.[1] They are as follows: the Defendant Mose Cohen's Motion to Reduce any Verdict for the Plaintiff (doc. 210), the Defendant NARC's Motion to Object to Judgment Being Entered Prior to Adjustment for Collateral Benefits (doc. 216), the Defendant CAS's Motion to Object to Judgment Being Entered Prior to Adjustment for Collateral Benefits (doc. 217), Defendant I. Deutch's Motion to Incorporate Contribution into the Judgment Entry (doc. 221), Defendant I. Deutch's and Mose Cohen's Motion for Reconsideration (doc. 232), the Plaintiff's Response (doc. 233), Defendant Deutch's Motion for Judgment as a Matter of Law (doc. 235), Defendant NARC's Motion for Judgment as a Matter of Law (doc. 236), the Defendant's Supplemental Memoranda (doc. 237),[2] the Defendant's Reply (doc. 238), the Affidavit of James B. Helmer, Jr. (doc. 239), the Plaintiff's Motion for Prejudgment Interest (doc. 242), the Defendant's Supplemental Memoranda (doc. 243),[3] the Plaintiff's Response to Judgment as a Matter of Law (doc. 244), the Defendant Deutch's Motion for a Hearing (doc. 245), the Affidavit of John M. Hands (doc. 246), the Defendant's Reply (doc. 247), Defendant I. Deutch's Response (doc. 248), the Affidavit of Todd M. Powers (doc. 249), the Plaintiff's Motion for Judgment Entry

---

1. We recognize that the motions for an adjustment of the verdict (docs. 210, 216, and 217) were filed prior to the Court entering Judgment. The Court will consider these pleadings to be motions to modify the Judgment that has already been entered.

2. Defendant NARC did not move for leave to file its supplemental memorandum. Nevertheless, in the interests of justice and in order to hear the full arguments of the parties, the Court will consider this supplemental memorandum in this Order.

3. Defendant CAS did not move for leave to file its supplemental memorandum, but for the same reasons mentioned in Footnote 2, the Court will consider this supplemental memorandum in this Order.

(doc. 250), the Plaintiff's Motion to file a Supplemental Petition (doc. 251), the Plaintiff's Response to the Motion for a Hearing (doc. 252), the Plaintiff's Reply to the Motion for Prejudgment Interest (doc. 253), the Defendant's Memorandum in Support of Motion for a Hearing to Determine Collateral Benefits (doc. 254), and the Affidavit of James B. Helmer, Jr. (doc. 257).

## SUPPLEMENTAL PETITION

In the case before the Court, we understand that Neare, Gibbs & Company was the underwriter who procured an insurance policy for NARC through Insurance Company of America to cover any personal injuries arising on the premises where Mr. Winningham was injured.

More than thirty days has elapsed since the Judgment has been rendered by the jury, and Neare, Gibbs & Company and Insurance Company of America have failed to satisfy the Plaintiff's Judgment. In such a situation, the Ohio legislature has provided the following:

> [u]pon recovery of a final judgment against any firm, person, or corporation by any person ... for loss or damages on account of bodily injury or death ... if the defendant in such action was insured against loss or damage at the time when the right of action arose, the judgment creditor ... is entitled to have the insurance money provided for in the contract of insurance between the insurance company and the defendant applied to the satisfaction of the judgment. If the judgment is not satisfied within thirty days after it is rendered, the judgment creditor ... to reach and apply the insurance money to the satisfaction of the judgment, may file a supplemental petition in the action in which said judgment was rendered, in which the insurer is made new party defendant in said action, and whereon service of summons upon the insurer shall be made and returned as in the commencement of an action at law. Thereafter, the action shall proceed as to the insurer as in an original action.

Ohio Rev.Code § 3929.06 (emphasis added). Accordingly, under this statute and Fed.

R.Civ.P. 15(d), we grant the Plaintiff leave to file its Supplemental Petition against Neare, Gibbs & Company and Insurance Company of America.

## JUDGMENT AS A MATTER OF LAW

The Defendants have moved for a Judgment as a Matter of Law under Fed. R.Civ.P. 50(b). This Court has considered many of these issues before in denying the Defendants' Motions for Summary Judgment and the Defendants' Motion for a Directed Verdict.

### *Background*

The Plaintiff, Dale Winningham, worked at North American Terminals ("NAT") as a laborer who unloaded cargo from barges and rail cars. On April 28, 1988, Mr. Winningham was electrocuted, resulting in the loss of his hands and forearms, as well as severe burns to his body.

Mr. Winningham's accident occurred at 3291 Southside Avenue. 3291 Southside Avenue is industrial property with three docks on the banks of the Ohio River. The property extends northward from the Ohio River and is bisected east to west by Southside Avenue, a public road running parallel to the river.

The legal title to 3291 Southside Avenue was held by CAS, which is composed of two general partners, Mose Cohen and I. Deutch. In 1985, however, CAS entered into an installment land contract with NARC to sell 3291 Southside Avenue. The installment land contract provided that title would pass from CAS to NARC when NARC made its final payment on the purchase price, which was anticipated to be in 1987.

Throughout the time of the installment land contract, CAS continued to use 3291 Southside Avenue for part of its business. The evidence at trial showed that Mose Cohen had the following relationships with 3291 Southside Avenue: (1) a Mose Cohen truck knocked down the quadraplex wire one week before the Plaintiff's injury; (2) Mose Cohen dumped motor blocks on the north portion of 3291 Southside Avenue, thus eliminating access to the eastern

gates of the property; (3) Mose Cohen failed to post warning signs concerning the condition of the wires involved in Mr. Winningham's accident; (4) Mose Cohen trucks carried almost two hundred thousand tons of scrap onto 3291 Southside Avenue during the mid–1980's; (5) Mose Cohen retained numerous rights to use and control 3291 Southside Avenue under the installment land contract with NARC; and (6) Mose Cohen was aware of the quadraplex wire and its height.

I. Deutch, too, had intensive involvement at 3291 Southside Avenue: (1) the principal of I. Deutch saw the conveyor become entangled in the quadraplex wire before Mr. Winningham's accident; (2) I. Deutch dumped motor blocks on the northeast side of Southside Avenue, thus blocking access to the eastern gates of the property for the 80–foot conveyor; (3) I. Deutch, as a general partner of CAS, retained numerous rights under the installment land contract with NARC to use and control 3291 Southside Avenue; (4) I. Deutch had several employees on the property on a regular basis; and (5) I. Deutch's trucks regularly drove over the property and used the main gate.

### Standard of Review

■ Judgment as a matter of law under Fed.R.Civ.P. 50 should be granted if, upon viewing the totality of the admissible evidence most favorable to the party opposing the motion, a reasonable trier of fact could draw but one conclusion. *Ridenour v. Lawson Co.,* 791 F.2d 52, 55 (6th Cir.1986); *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir.1983). Thus, in the determining the motion now before this Court, we have viewed the evidence in the light most favorable to the Plaintiff, the non-moving party.

### Discussion

The Defendants have moved for a Judgment as a Matter of Law based upon four grounds: (1) the Defendants did not have possession and control over the premises; (2) the work conducted by Mr. Winningham's employers was inherently dangerous

and the Defendants were not active participants in the work; (3) the "inherent risk" exception to the frequenter statute is applicable; (4) the site of Mr. Winningham's injury was on a public thoroughfare.[4]

### (1) Possession and Control over the Premises

The Defendants first contend that they should be entitled to a Judgment as a Matter of Law, because they did not retain sufficient possession and control of the premises to owe a duty to Mr. Winningham. This argument has already been determined by the Court in denying the Defendants' Motions for Summary Judgment.

The evidence established at trial does not alter this Court's determination. In fact, the evidence at trial further convinces this Court that the Defendants owed a duty to Mr. Winningham. Therefore, the Court reaffirms its reasoning in denying the Motion for Summary Judgment, and denies the Defendants' Motion for Judgment as a Matter of Law. *See* Doc. 122.

### (2) No Participation in Inherently Dangerous Work

■ The Defendants next argue that this Court should enter Judgment as a matter of law because the Defendants did not participate in NAT's inherently dangerous work. The cases cited by the Defendant involving inherently dangerous work are independent contractor cases. *See e.g., Angel v. United States,* 650 F.Supp. 434 (S.D.Ohio 1986), *aff'd without op.* 836 F.2d 1347 (6th Cir.1988); *Cafferkey v. Turner Constr. Co.,* 21 Ohio St.3d 110, 488 N.E.2d 189 (1986); *Hirschbach v. Cincinnati Gas & Elec. Co.,* 6 Ohio St.3d 206, 452 N.E.2d 326 (1983). In independent contractor cases, courts will only hold landowners liable if: (1) the work contains elements of real or potential danger and the frequenter or invitee or its employee has actual or constructive notice of the existence of such danger; and, (2) the landowner actually participated in the job operation where the injury occurred. *Id.*

---

**4.** We note that some of these arguments apply   only to CAS, rather than NARC.

In the matter before this Court, no independent contractor is involved in the litigation. Instead, all of the Defendants and NAT actively used the premises where Mr. Winningham was injured for their own business purposes over the course of several years. In recognition of the fact that the activities of an independent contractor are generally not supervised or controlled by the landowner, courts have imposed stringent requirements before landowners may be held liable for the actions of independent contractors. *See Brauning v. Cincinnati Gas & Elec. Co.*, 54 Ohio App.3d 38, 44, 560 N.E.2d 811, 817 (1989) ("[t]he primary responsibility for protecting employees of an independent contractor lies with the independent contractor"). A landowner hires an independent contractor to perform a specific activity and retains little, if any, right to control the work being performed. *See Capra v. B.A. Assocs. Ltd.*, 27 O.Misc.2d 2, 499 N.E.2d 931 (1984). Once performance is complete, the independent contractor leaves the premises and proceeds to its next task.

In contrast, NAT, NARC, and CAS were all regularly and continuously using 3291 Southside Avenue in their *own* respective businesses. None of these businesses left the premises after performing a specific, discrete activity. Instead, part or all of their business revolved around 3291 Southside Avenue.

The law, in essence, recognizes that those who have possession and control over a premises have relatively low costs in preventing accidents, and therefore have a duty to prevent them. *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 57, at 386 (5th ed. 1984) ("the person in possession of property ordinarily is in the best position to discover and control its dangers ... [however,] the obligation may arise from possession and control, even without legal ownership"). Thus, NARC and CAS are not entitled to a Judgment as a Matter of Law, because they could have—and should have—stopped Dale Winningham from being injured. To release them from this case would not only risk depriving Dale Win-

ningham of full compensation, but also inadequately deter those with low costs in preventing future accidents by taking precautions.

On the other hand, the law also recognizes the relatively higher costs involved in landowners policing the activities of independent contractors. Independent contracts essentially run their own operation on someone else's land for a limited period of time. Someone hiring an independent contractor usually reserves no right to control the performance of the work. *Capra*, 27 O.Misc.2d at 2, 499 N.E.2d at 931. Thus, the landowner, in one sense, gives the independent contractor ownership rights over the owner's land so that the independent contractor may perform the function for which it was hired. Therefore, liability will only be imposed upon landowners for the actions of independent contractors in the event of certain, restrictive conditions.

Thus, courts have made the policy judgment that landowners must police the actions of independent contractors only in certain limited occasions; whereas, those who have the right to possess and control the land must reasonably maintain their land in order to avoid accidents. This Court supports that policy decision made by previous courts. Accordingly, we are unpersuaded by the Defendants' argument that they did not participate in NAT's inherently dangerous work. The Defendants' liability arose because all Defendants either owned, possessed and/or controlled 3291 Southside Avenue.

### (3) Inherent Risk Exception to the Frequenter Statute

The next argument of the Defendants is that the Plaintiff's employer, NAT, was aware of the danger which existed when its employee instructed Mr. Winningham to climb the conveyor and disentangle it from the quadraplex line and common neutral wire. The Defendants conclude that if NAT knew of the dangers of sending Mr. Winningham up the conveyor, and the Defendants did not participate in this act, the Defendants are entitled to a Judgment as a matter of law, because the over-

head power lines cause an "inherent risk" exception to the frequenter statute. The Plaintiff counters that the existence of overhead power lines does not create an "inherent risk" exception to the frequenter statute.

Courts are divided on the issue of whether working closely around electrical power lines constitutes an inherent risk. In *Lazar v. Cleveland Elec. Illuminating Co.*, 43 Ohio St.2d 131, 331 N.E.2d 424 (1975), the plaintiff was severely burned when he came in contact with two uninsulated power lines owned by the defendant. A jury awarded the plaintiff $30,000, but the Court of Appeals reversed, determining that the plaintiff was contributorily negligent. The Ohio Supreme Court disagreed with the appellate court:

> [c]ourts have found, in these cases and others, that reasonably prudent men know little of the attributes and dangers of high-voltage electricity. Courts have discovered that reasonably prudent men are marginally able, at best, to distinguish between those overhead wires which are dangerous, and those which are not.

*Id.* at 141, 331 N.E.2d at 431. Nevertheless, in *Tedesco v. Cincinnati Gas & Elec. Co.*, 448 F.2d 332, 334 (6th Cir.1971), *cert. denied*, 405 U.S. 923, 92 S.Ct. 961, 30 L.Ed.2d 794 (1973), the Sixth Circuit emphatically declared about Ohio law that:

> ... there can be no question that in the installation of the new poles, wires and equipment, Hoosier [an independent contractor] was engaged in work inherently dangerous, for high tension lines carrying 2400 volts are dangerous.

We conclude that the law is unclear as to whether working closely around electrical power lines is inherently dangerous.

This Court need not synthesize or resolve this competing authority in order to decide the case that is before it. Courts have only applied the inherent risk exception to the frequenter statute in independent contractor cases. *See e.g.*, *Eicher v. United States Steel Corp.*, 32 Ohio St.3d 248, 512 N.E.2d 1165 (1987); *Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103, 113 N.E.2d 629

(1953); *Mount v. Columbus & Southern Ohio Elec. Co.*, 39 Ohio App.3d 1, 528 N.E.2d 1262 (Coscoctan Cty.1987). No independent contractors are involved in this case. We have already discussed why the law of independent contractors is not applicable to the Defendants. Therefore, the inherent risk exception to the frequenter statute does not relieve the Defendants in this case of liability.

(4) The Site of Mr. Winningham's Injury

■ The Defendants' final argument is that because Mr. Winningham was electrocuted over the public thoroughfare which bisects 3291 Southside Avenue, this Court should grant the Defendants Judgment as a matter of law. Mr. Winningham's accident occurred at the entrance to the property on Southside Avenue when a conveyor became entangled with electrical lines. The accident appears to have actually occurred over Southside Avenue. Southside Avenue bisects 3291 Southside Avenue, and was regularly used for business purposes by all the Defendants to enter and exit the property. All the Defendants knew of the practice of moving the conveyors from the docks at the river's edge to the rail lines on the northside of the property.

More importantly, all of the Defendants knew that the conveyors sometimes became entangled in the wires. The Defendants had this knowledge because the wires were strung on poles situated on property which the Defendants either owned, possessed, and/or controlled. Therefore, the jury reasonably concluded that the Defendants should have foreseen that the workers on 3291 Southside Avenue may have been injured while trying to disentangle the conveyor from the electric wires. The precise locale where Mr. Winningham was injured is not dispositive of the Defendants' liability. Instead, the Defendants may be held liable because they had ownership, possession, and/or control over the instrumentalities which caused Mr. Winningham's accident.

In support of their position, Defendant NARC points to *Brandyberry v. Owens*, Case No. 2542, 1989 WL 94546 (Clark Cty. Ct.App.1989), *dismissed by*, 48 Ohio St.3d

704, 549 N.E.2d 1190 (1990). The *Brandyberry* court considered a lawsuit in which a car was struck by another car that was turning out of the Navistar plant. The plaintiff sued both the car pulling out and Navistar, claiming that Navistar knew or should have known of the dangerous intersection outside of its plant. Relying in part upon W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, at 348–350 (4th ed. 1971), the *Brandyberry* court held that Navistar could not be held liable. The court reasoned that property owners should not be held liable for acts done by business invitees who have left the owner's premises and are outside of the owner's control. *Id.* at \*2.

The litigation now before this Court is not analogous. In the case at bar, NARC, Mose Cohen, and I. Deutch all had the ability to control the placement of the utility poles and the arrangement of the various electrical wires. They did not exercise their possession and control to remedy the situation—which the jury determined was negligent. Unlike *Brandyberry*, the Defendants did not have to control the conduct of a third party; rather, they merely had to remedy their own conduct to prevent Mr. Winningham's accident. Prosser noted the following:

> [t]he possessor of land is first of all required to exercise reasonable care, with regard to any activities which he carries on, for protection of those outside of his premises.... A large proportion of the cases have involved danger to an adjacent public highway. The public right of passage carries with it ... an obligation upon the occupiers of abutting land to use reasonable care to see that the passage is safe. They are not required to maintain or repair the highway itself, but they will be liable for any unreasonable risk to those who are on it, such as ... [a] utility pole next to the street.....

W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 57, at 387, 388 (5th ed. 1984). In Mr. Winningham's case, the liability of the Defendants is even clearer. Mr. Winningham was neither a traveller on the highway nor an abutting land-owner. Instead, he was a laborer on 3291 Southside Avenue. Therefore, there can be no question that the Defendants knew that Mr. Winningham and his co-employees were working on property which was bisected by a public road. Consequently, the fact that Mr. Winningham was injured on the public road rather than the property, itself, does not extinguish the Defendants' duty to maintain their premises in a reasonably safe condition for the workers at 3291 Southside Avenue.

Furthermore, the Defendants' contention makes poor public policy. Essentially, the Defendants argue that an owner cannot be held liable for negligent activities occurring on the land as long as the victim of those negligent activities is injured off of the owner's land. Under this argument, a plaintiff would receive no compensation from a party whose actions proximately caused the plaintiff's injury, if, by chance, the site of the plaintiff's injury was off of the defendant's property. This would inadequately deter the defendant from preventing the accident, despite the defendant's relatively low accident-avoidance costs. Accordingly, we reject the Defendants' argument that they should not be held liable because Mr. Winningham was injured on a public road.

## PREJUDGMENT INTEREST

The Plaintiff has asked this Court to award prejudgment interest of 10% per year against the Defendants in this action. *See* Ohio Rev.Code §§ 1343.03(A) and 1343.03(C). The Ohio legislature has provided that:

> [i]nterest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid if, upon the motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to

whom the money is to be paid did not fail to make a good faith effort to settle the case.

*Id.* The Ohio Supreme Court interpreted the prejudgment interest statute in *Kalain v. Smith*, 25 Ohio St.3d 157, 495 N.E.2d 572 (1986). In *Kalain*, the court stated that prejudgment interest is appropriate if any of the following four circumstances are present: (1) the defendant has been uncooperative in the discovery proceedings; (2) the defendant irrationally evaluated its risk and potential liability; (3) the defendant has attempted to unnecessarily delay any of the proceedings; or, (4) the defendant has failed to make a good faith settlement offer or failed to respond in good faith to an offer from the other party. *Id.*

The Plaintiff claims that he is entitled to prejudgment interest against all the Defendants. We now must examine whether any of the four circumstances discussed in *Kalain* arise with regard to any of the Defendants in this case. We first consider the Defendants Mose Cohen and I. Deutch, who compose the partnership of CAS. CAS submitted a detailed memorandum opposing prejudgment interest. *See* doc. 248.

■ In considering whether prejudgment interest is appropriate, the first issue is whether CAS was uncooperative in discovery. The Court extended discovery in this matter through the trial. This was due, in part, because the Plaintiff did not identify in a timely manner his expert witnesses. Both parties held numerous depositions in the weeks preceding trial. While this litigation has been particularly contentious by both sides, we find that CAS was not uncooperative in discovery.

Second, under *Kalain* we must consider whether CAS irrationally evaluated the risks of litigation. Given Mr. Winningham's extensive injuries, the Defendants faced potentially large liability in trying this case. Still, Defendant CAS plausibly argued to the jury that they should not be liable, because they did not retain sufficient possession or control over the part of the premises where Mr. Winningham was injured. Although the Defendants are jointly and severally liable on the Plaintiff's economic damages, assuming all Defendants are solvent, CAS is responsible for $308,000 of the verdict, prior to any deductions for collateral benefits. As will be discussed under the fourth prong of *Kalain*, CAS offered Mr. Winningham $200,000 to settle the case. Given the proximity of the jury's determination and CAS's settlement offer and this Court's own assessment of the case, we conclude that CAS rationally evaluated the risks of litigation. *See Black v. Bell*, 20 Ohio App.3d 84, 88, 484 N.E.2d 739, 743 (1984) (although a party's good faith efforts to settle is not dispositive, it can be circumstantial evidence of the reasonableness of a party's evaluation); *Duren v. Suburban Community Hosp.*, 24 Ohio Misc.2d 25, 495 N.E.2d 51 (1985) (same).

Furthermore, looking to the third prong of *Kalain*, we find no attempt by CAS to unnecessarily delay the proceedings. CAS made a motion to continue the trial because of a conflict with the vacation of one of the attorneys. As a result, the Court moved the trial forward on the calendar. Because of discovery problems, CAS made a second motion to continue the trial, which the Court denied. Based upon the history of this litigation, the Court does not consider the CAS's tactics and motions to be an attempt to unnecessarily delay the proceedings.

Finally, we must consider whether CAS has failed to make a good faith settlement offer or responded in good faith to an offer from the Plaintiff. CAS made several offers to Mr. Winningham to settle the litigation. The last of these offers was for $200,000. Given CAS's involvement on the property where Mr. Winningham was injured, we cannot conclude that CAS's offer was made in bad faith. Therefore under *Kalain*, we conclude that prejudgment interest should not be awarded against Defendant CAS.

■ We must now consider whether prejudgment interest should be awarded against Defendant NARC. NARC inexplicably failed to respond to the Plaintiff's

Motion for Prejudgment Interest.[5] *See* United States District Court for the Southern District of Ohio, Local Rule 7.2(a)(2) ("[f]ailure to file a memorandum in opposition may be cause for the Court to grant the Motion as filed").

NARC had two insurance policies that appear to be involved in this case. One insurance carrier, United States Fidelity & Guaranty Company settled with the Plaintiff for $900,000 on April 24, 1992. *See* CAS's Memorandum in Opposition, doc. 248, ex. G. In exchange, Mr. Winningham promised not to levy execution of a judgment against United States Fidelity & Guaranty Company. NARC's other insurance carrier, Neare, Gibbs & Co./Insurance Company of North America, has failed to make any offers of settlement, according to the undisputed representation by Plaintiff's counsel.

We find that NARC and its counsel, Arthur Schlemmer and David Peck, failed to rationally assess NARC's potential liability in this case. NARC was extensively involved with the activities on 3291 Southside Avenue. NARC was a primary user of the property, and had numerous opportunities to rearrange the electrical wiring which proximately caused Mr. Winningham's accident. NARC was fully aware of the extent of Mr. Winningham's injuries. We conclude from these facts that NARC irrationally assessed the risk associated with trying this case. Thus, prejudgment interest is necessary to fully compensate the Plaintiff with respect to his claims against NARC. *See Dreenan v. Gen. Motors Corp.*, 977 F.2d 246, 253 (6th Cir.1992) (noting that an award of prejudgment interest is compensatory rather than punitive).[6]

Accordingly, the Plaintiff is entitled to prejudgment interest against NARC. NARC, however, is only liable for the prejudgment interest which represents the percentage of its liability. Turning to the figures, NARC owes prejudgment interest

on 84% of the verdict of $1,925,000, less the $900,000 for which one of NARC's insurance companies, United States Fidelity & Guaranty Company settled, minus the collateral benefits of $120,851.09, which are deductible.[7] Thus, NARC is liable for prejudgment interest of 10% per year on $596,-148.91. Compounded annually, Defendant NARC owes $276,672.29 in prejudgment interest to the Plaintiff, Dale Winningham. Defendant CAS is not in any way liable for this amount, because CAS was not responsible for NARC's irrational assessment of risk regarding its potential liability in this case.

## DEDUCTION OF COLLATERAL BENEFITS

### *Introduction*

In 1987, the Ohio legislature passed certain reforms to the state's tort law. In particular, the Ohio legislature enacted Ohio Rev.Code § 2317.45, in response to the collateral source rule of the common law. The collateral source rule ensures that any benefits the plaintiff receives from a source independent of the defendant, will not diminish the plaintiff's recovery from the defendant. Comment, *The Collateral Source Rule in Ohio*, 16 U.Dayton L.Rev. 413 (1991). Thus, the collateral source rule forced a defendant to pay the full amount of the plaintiff's damages, regardless of the plaintiff's recovery from other sources. As a result, defendants were fully deterred from committing tortious acts. *See generally, id.* at 414–421. However, plaintiffs sometimes obtained a double recovery. *Id.*

Nevertheless, out of concern over the "liability explosion" and the "insurance crisis," the Ohio legislature passed Ohio Rev. Code § 2317.45. In essence, this statute revoked the collateral source rule. The statute requires the Court in a tort action to subtract from any judgment for the

---

5. We do note that at the hearing on all post-trial motions, NARC's Counsel expressed its brief opposition to the Plaintiff's Motion.

6. It appears to the Court that Neare, Gibbs & Co./Insurance Company of North America will

be responsible for paying this prejudgment interest incurred by NARC.

7. We will discuss later in this Order how we arrived at this figure for collateral benefits.

plaintiff all relevant collateral benefits which the plaintiff has received or is reasonably certain to receive within the next sixty months.[8] Ohio Rev.Code § 2317.-45(B)(2)(a)(i). However, the Court must also add an amount to the judgment that represents the costs for three years of obtaining the collateral source benefit. Ohio Rev.Code §§ 2317.45(B)(2)(b) and (B)(2)(c)(ii). Moreover, the statute operates only where there is no "right of recoupment" against the collateral benefits which the plaintiff has received. Ohio Rev.Code § 2317.45(A)(1)(b).

■ The legislature had three goals in enacting this statute: (1) to avoid double recovery by plaintiffs; (2) to take into account the plaintiff's costs of having a collateral source; and (3) to simplify the jury's job of computing damages. *Comment, The Collateral Source Rule in Ohio*, 16 U.Dayton L.Rev. at 430 (citing Volkema and Darling, *An Exception to the Rule*, Ohio Law (Jan.–Feb.1990)). Thus, the legislature was attempting to cap the so-called "liability explosion," while ensuring that plaintiffs remained fully compensated.

Pursuant to Ohio Rev.Code § 2317.45, the Defendants have asked this Court to reduce the jury's verdict by the amount of collateral benefits already received by Mr. Winningham, or those that he is reasonably certain to receive within the next sixty months. In response, the Plaintiff has asserted a number of arguments, which we shall analyze.

### The Constitutionality of Ohio Rev.Code § 2317.45

Plaintiff Dale Winningham contends that this Court should not make collateral source deductions from the Court's judgment, because Ohio Rev.Code § 2317.45 is unconstitutional.

■ This Court's analysis must begin with the basic rule that the laws enacted by the legislature are presumed to be constitu-

tional. *See United States ex rel. Barbara Burch v. Piqua Engineering, Inc.*, 803 F.Supp. 115, 117 (S.D.Ohio 1992) (J. Spiegel); *Sedar v. Knowlton Constr. Co.*, 49 Ohio St.3d 193, 199, 551 N.E.2d 938 (1990). Nevertheless, the will of the majority may not preempt the rights established in the Constitution. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

The Plaintiff argues that Ohio Rev.Code § 2317.45 is unconstitutional for three reasons: (1) the statute violates a plaintiff's right to a jury trial; (2) the statute impinges upon the plaintiff's right to an open court and a fair and impartial remedy; (3) the statute does not give a plaintiff due process; and (4) the statute violates the equal protection clause.

(1) The Right to a Jury Trial

■ Mr. Winningham first contends that Ohio Rev.Code § 2317.45 violates his right to a jury trial, as guaranteed by the Ohio Constitution. For this argument, Mr. Winningham relies upon *May v. Tandy Corp.*, Case No. 165,883 (Cuyahoga Cty.Common Pleas Sept. 27, 1991). *May* was a premises liability case in which the jury awarded $173,500 for the plaintiff. When the defendant requested that the court subtract the plaintiff's collateral benefits from the judgment pursuant to Ohio Rev.Code § 2317.45, the plaintiff claimed that the statute was unconstitutional. The *May* court held that Ohio Rev.Code § 2317.45 violated the Ohio Constitution. *Id.*

In *May*, just as in the case before the Court, the plaintiff had a right to a jury trial under the Ohio Constitution, because both plaintiffs' causes of action existed at the time of adoption of the Ohio Constitution. *See Cincinnati v. Cincinnati Dist. Council 51, etc.*, 35 Ohio St.2d 197, 299 N.E.2d 686 (1973), *cert. denied*, 415 U.S. 994, 94 S.Ct. 1597, 39 L.Ed.2d 892 (1974); *Ireland v. Cheney*, 129 Ohio St. 527, 196 N.E. 267 (1935). The *May* court reasoned

---

**8.** In an effort to significantly effect tort law, the Ohio legislature broadly defined collateral benefits, as those

   ... benefits that a plaintiff has received, or may be entitled to receive within the next

sixty months after the entry of judgment, as a result of an injury, death, or loss to person or property that is a subject of a tort action.... Ohio Rev.Code § 2317.45(A)(1)(a).

that the right to a jury includes the opportunity of a plaintiff to have a jury determine her damages. *May*, Case No. 165,-883, at 8. Therefore, the *May* court held that

> [i]t is this right to have a jury determine the fact and scope of *all* the plaintiff's damages which R.C. 2317.45 impermissibly vitiates through its segregation of the damage-related factor that is controlled exclusively by the determinations of the judge and not the jury.

*Id.* (emphasis in original). The court in *May* concluded that "... the purpose of R.C. 2317.45 was to override the jury's determination or to some extent avoid the jury as the final arbiter of the parties' dispute." *Id.* at 12; *see also Sorrell v. Thevenir*, Case No. 89CV121, at 6 (Gallia Cty. Common Pleas Jan. 14, 1991) ("[t]o allow a jury to consider a plaintiff's case; deliberate intensely upon a verdict; taking into consideration the issues of liability and damages and render a true verdict is meaningless and an act of futility if we then allow a legislative enactment to in essence reverse the decision of the jury").

In response, the Defendants argue that Ohio Rev.Code § 2317.45 neither removes, alters, nor adds to the issues before the jury. The Defendants cite to the decision in *Engle v. Volmer*, Case No. A–9007043 (Hamilton Cty.Common Pleas July 20, 1992) to support their contention. In *Engle*, the court considered the constitutionality of a reduction of the verdict by the plaintiff's collateral benefits. Relying upon the decision in *Cook v. Wineberry Deli, Inc.*, Case No. 14841, 1991 WL 131485 (Summit Cty.Ct.App. July 17, 1991), the *Engle* court noted that under Ohio Rev. Code § 2317.45, the jury still determines the plaintiff's full compensation without regard to the plaintiff's collateral benefits. The *Engle* court therefore concluded that Ohio Rev.Code § 2317.45 does not "... interfere ... with a right to a jury trial. Rather, it provides a process, dictated by the legislature, to prevent double recovery." *Engle*, Case No. A–9007043, at 4 (Hamilton Cty.Common Pleas July 20, 1992); *see also Morris v. Savoy*, 61 Ohio St.3d 684, 576 N.E.2d 765 (1991) (upholding the constitutionality of a statute directing the deduction from verdicts of collateral sources in medical malpractice cases).

Thus, Ohio courts are not uniform on the issue of whether Ohio Rev.Code § 2317.45 violates a plaintiff's right to a jury trial. After careful consideration, we agree with the Defendants' argument. As the *Cook* and *Engle* courts noted, under Ohio Rev. Code § 2317.45, the jury retains the power to determine whether the defendant is liable, and to decide the full amount of the plaintiff's damages. Ohio Rev.Code § 2317.45 does come into operation until after the jury's deliberations and verdict. The plaintiff is no more denied her right to a jury trial, than the defendant was denied his right to a jury trial when the plaintiff was entitled to a double recovery under the collateral source rule without the jury's right to know of the plaintiff's collateral sources.

Therefore, we conclude that Ohio Rev. Code § 2317.45 did not interfere with Mr. Winningham's right to have his claims heard by the jury. In Mr. Winningham's case, the jury determined that the defendants were liable, and that Mr. Winningham's damages totaled $1,925,000. Mr. Winningham's right to a jury trial is not violated because part of his damages are being paid from a source different than the Defendants.

(2) Right to an Open Court and a
Fair and Impartial Remedy

■ The Ohio Constitution provides that

> [a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, it shall have justice administered without denial or delay.

Art I, § 16. This Constitutional provision ensures: (1) that legislative enactments may abridge individual rights only by due course of law, which is equivalent to due process; and, (2) that all courts shall be open to all persons with a right to a remedy for his injury. *Sedar*, 49 Ohio St.3d at 199, 551 N.E.2d at 946. We will discuss,

the first prong, whether Ohio Rev.Code § 2317.45 violates due process, in the section below.

The second prong, the requirement of open courts, is not violated by Ohio Rev. Code § 2317.45. Ohio Rev.Code § 2317.45 does not eliminate a cause of action; rather, the courts remain "open" to a plaintiff's tort action. *See Cook*, Case No. 14841, at 10–12 (Summit Cty.Ct.App. July 17, 1991); *Engle*, Case No. A–9007043, at 5, 6 (Hamilton Cty.Common Pleas July 20, 1992). Ohio Rev.Code § 2317.45 only alters the source of some of the Plaintiff's compensation. Therefore, we conclude that Ohio Rev.Code § 2317.45 does not close down the courts to plaintiffs who wish to pursue their tort claims.

### (3) Due Process

The Plaintiffs also argue that Ohio Rev. Code § 2317.45 violates the due process guarantees of the Ohio and U.S. Constitutions. The Plaintiffs base their argument upon the decision in *Sorrell*, Case No. 89CL121 (Gallia Cty.Common Pleas Jan. 14, 1991). In considering whether Ohio Rev. Code § 2317.45 violates due process, the *Sorrell* court analyzed the constitutionality of the statute under strict scrutiny, because the statute "... interfere[s] with the exercise of fundamental rights...." *Id.* at 9, 10. Applying strict scrutiny, the court in *Sorrell* found that the state did not have a compelling state interest to permit the deduction of collateral benefits from a plaintiff's judgment. *Id.* at 10. Accordingly, the *Sorrell* court held Ohio Rev.Code § 2317.45 to be unconstitutional. *Id.* at 12.

■ This Court believes that the *Sorrell* court was incorrect in applying strict scrutiny as the standard of review to determine the constitutionality of Ohio Rev.Code § 2317.45. Strict scrutiny is applicable when a fundamental right is implicated by the statute in question.[9] *See generally,* Laurence H. Tribe, *American Constitutional Law* § 16–6, at 1451–1454 (2d ed. 1988). The United States Supreme Court has held that rights "explicitly or implicitly guaranteed by the Constitution" are funda-

mental. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33, 34, 93 S.Ct. 1278, 1296, 1297, 36 L.Ed.2d 16 (1973).

■ In the case before the Court, Ohio Rev.Code § 2317.45 does not implicate a constitutionally guaranteed right. The Seventh Amendment right to a jury trial is not involved, because, as discussed above, Ohio Rev.Code § 2317.45 does not limit or alter a plaintiff's right to have his case heard by a jury. Because no fundamental right is implicated, the rational basis test should be applied to examine whether Ohio Rev.Code § 2317.45 violates due process. *Cook*, Case No. 14841, at 13, 14 (Summit Cty.Ct.App. July 17, 1991).

■ In applying the rational basis test, the Ohio legislature had a legitimate state interest in passing Ohio Rev.Code § 2317.-45. The legislature decided that the deterrence of torts through the collateral source rule was having a deleterious effect upon society. As a result, the legislature focused upon fully compensating the plaintiff, rather than fully deterring the defendant. Under Ohio Rev.Code § 2317.45, a plaintiff has his judgment reduced only by the amount he has received from a collateral source. We cannot say that the Ohio legislature was irrational in eliminating a plaintiff's double recovery which was permissible under the collateral source rule. Therefore, we find that Ohio Rev.Code § 2317.45 does not violate due process. *See also Cook*, Case No. 14841, at 13, 14 (Summit Cty.Ct.App. July 17, 1991); *Engle*, Case No. A–9007043, at 6 (Hamilton Cty.Common Pleas July 20, 1992).

### (4) Equal Protection

■ The Plaintiffs finally argue that Ohio Rev.Code § 2317.45 violates the equal protection clause. Just as in the due process analysis above, we must apply the rational basis test to examine the equal protection clause. Under the rational basis standard, this Court must determine whether the statute bears a rational relationship to a legitimate state interest. *Mc-*

---

**9.** We note that strict scrutiny is also applicable for certain suspect classifications. *See general-* *ly,* Laurence H. Tribe, *American Constitutional Law* § 16–6, at 1451–1454 (2d ed. 1988).

*Donald v. Bd. of Election Comm'rs of Chicago,* 394 U.S. 802, 808, 809, 89 S.Ct. 1404, 1408, 1408, 22 L.Ed.2d 739 (1969).

█ In the case before the Court, Ohio Rev.Code § 2317.45 bears a rational relationship to the Ohio legislature's concern over excessive tort awards. Therefore, using the same analysis as we did with the due process argument, we find that Ohio Rev.Code § 2317.45 does not violate equal protection. *See also Cook,* Case No. 14841, at 14, 15 (Summit Cty.Ct.App. July 17, 1991); *Engle,* Case No. A–9007043, at 6 (Hamilton Cty.Common Pleas July 20, 1992).

### Conclusion on Constitutionality

This Court has carefully considered the Plaintiff's arguments concerning the constitutionality of Ohio Rev.Code § 2317.45. However, this Court must defer to the judgment of the legislature. Consequently, we agree with the Defendants' arguments, and hold that Ohio Rev.Code § 2317.45 is constitutional.

### RIGHT OF RECOUPMENT

The set-off provisions of Ohio Rev.Code §§ 2317.45 do not apply if there is a "right of recoupment" against a plaintiff's collateral benefits. Ohio Rev.Code § 2317.-45(A)(1)(b). The Plaintiff argues that there is a right of recoupment against most of Mr. Winningham's collateral benefits. Therefore, Mr. Winningham contends that the collateral benefits he has received should not be deducted from the jury's verdict.

The Plaintiff's argument is set forth as follows. Dale Winningham has been determined to be a longshoreman. *Winningham v. Sexton,* Case No. C–1–91–447 (E.D.Ky. Jan. 22, 1991) (the case before the Court was originally filed in the Eastern District of Kentucky, before it was transferred to this Court). However, Mr. Winningham's employer, NAT, was not a complying employer with regard to the Longshoreman's Act or the Ohio Worker's Compensation Act.

The Plaintiff argues that under the Longshoreman's Act, any benefits paid to Mr. Winningham under that Act, are subject to a lien, if Mr. Winningham recovers those benefits from a third party. *See* 33 U.S.C. § 933(f) (1992). The Plaintiff continues that if the State of Ohio Industrial Commission determines that Mr. Winningham's claims properly lie under the Longshoreman's Act, then the State of Ohio Industrial Commission may seek recoupment.

█ To support this proposition, the Plaintiff cites the Court to Ohio Rev.Code § 4123.54.1. Mr. Winningham concludes that because the State of Ohio Industrial Commission has a right of recoupment, certain collateral benefits he has received should not be set-off from the jury's verdict.

However, Ohio Rev.Code § 4123.54.1 states in full:

> In the event that any person who is entitled to receive benefits for total disability, loss of member, or death through the application of section 4123.033 [4123.-03.3] of the Revised Code, receives, in connection with the injury giving rise to such entitlement, benefits under an act of Congress or federal program providing benefits for **civil defense workers or their survivors,** the benefits payable hereunder, shall be reduced in proportion to the benefits received under such other act or program.

*Id.* (emphasis added). Plaintiff's Counsel has offered no explanation of why Ohio Rev.Code § 4123.54.1 is applicable to Mr. Winningham, who is not a civil defense worker. Therefore, we conclude, based upon the plain language of the statute, that the State of Ohio does not possess a right of recoupment against Mr. Winningham under Ohio Rev.Code § 4123.54.1.

█ Furthermore, no right of recoupment exists under 33 U.S.C. § 933(f) either. Mr. Winningham has not received any benefits under the Longshoreman's Act. Nor has Mr. Winningham established an entitlement to benefits under the Longshoreman's Act. Therefore, because Mr. Winningham has not benefited under the Long-

**1476**

shoreman's Act, we fail to see how he would be subject to a right of recoupment under the Longshoreman's Act.

## COLLATERAL SOURCE DEDUCTIONS

In the absence of a right of recoupment, the Ohio legislature requires this Court to deduct from the jury verdict the amount of all collateral benefits received by the Plaintiff or reasonably certain to be received by the Plaintiff within sixty months of the verdict. Ohio Rev.Code § 2317.-45(B)(2)(a)(i).

This Court must now consider those collateral benefits. The Court must then modify its Judgment in this case to reflect its decision regarding collateral benefits, as well as other post-verdict issues.

### Social Security Benefits

■ In the affidavit of James B. Helmer, Jr., Plaintiff's Counsel, he states that Dale Winningham has already received approximately $9,463.20 in social security disability payments since his accident. Under Ohio Rev.Code § 2317.45, the Court must deduct this amount from the Plaintiff's verdict.

We now must consider future social security disability benefits. Any social security disability payments which Dale Winningham is reasonably likely to obtain must also be deducted from the jury's verdict. See Ohio Rev.Code § 2317.45. Clearly, Mr. Winningham has suffered a terrible accident. Moreover, he testified about his accompanying emotional trauma.

Nevertheless, this Court is convinced that Mr. Winningham will once again be a productive member of our society.[10] Based upon his testimony at trial, this Court observed that Mr. Winningham will fight back valiantly from his accident. Mr. Winningham has plans to pursue the Graduate Equivalency Degree ("GED"), which would open many potential jobs for him. In addition, Plaintiff's counsel told the Court at the post-trial hearing, that Mr. Winning-

ham is now overcoming his drug and alcohol problems he experienced after the accident.

Therefore, based upon this Court's experience in social security disability cases, we conclude that Mr. Winningham is reasonably certain to obtain disability payments for only one year. See 20 C.F.R. §§ 404.-1592(d); 404.1594 (1991). This Court expects Mr. Winningham to be gainfully employed after that year has elapsed.

Accordingly, Mr. Winningham is reasonably likely to receive $231.10 per month in social security disability payments for the next year. See Affidavit of James B. Helmer, Jr., doc. 239, ex. A. Therefore, under Ohio Rev.Code § 2317.45, an additional $2773.20 must be set off from jury's verdict.

### Workers' Compensation

■ Mr. Winningham's employer, NAT, was a non-complying employer under Ohio Worker's Compensation program, as well as the Longshoreman's Act. Thus, all of Mr. Winningham's compensation from the Ohio Bureau of Workers' Compensation was from a general fund designed to provide protection for employees of non-complying employers. The Plaintiff contends that the jury's verdict should not be deducted by Mr. Winningham's payments under Workers' Compensation because NAT did not pay the requisite Workers' Compensation premiums. The Plaintiff reasons that the Mr. Winningham's Workers' Compensation benefits have not been derived from his non-complying employer, and therefore are not collateral benefits.

In fact, however, Mr. Winningham's Workers' Compensation payments are collateral benefits under § 2317.45. The Ohio legislature defined collateral benefits broadly, and included benefits derived from:

"[a] federal, state, or political subdivision of a state disability income or workers'

---

10. We recognize that Plaintiff's counsel called several experts who testified that Mr. Winningham cannot be reemployed. We, however, disagree. Moreover, the jury probably did not

accept these conclusions either, in light of the relatively low award of $390,000 for Mr. Winningham's lost wages.

compensation program, or a wage continuation program, of an employer;"

Ohio Rev.Code § 2317.45(A)(1)(a)(ii). In enacting Ohio Rev.Code § 2317.45, the legislature wished to eliminate double recoveries by plaintiffs under the collateral source rule, while at the same time maintaining full compensation for plaintiffs. By holding that Mr. Winningham's Workers' Compensation benefits are deductible, we are applying the legislature's policy of eliminating a double recovery for plaintiffs such as Dale Winningham. Moreover, we are concerned about the fairness of forcing Defendants NARC and CAS to pay more to Mr. Winningham, because NAT, not a defendant to this action, did not comply with the Workers' Compensation law. Therefore, we find that the benefits Mr. Winningham received from Workers' Compensation fall under the statutory definition of collateral benefits.

Since the time of Mr. Winningham's injury in April 1988, Mr. Winningham has received Ohio Workers' Compensation under its non-complying employer program, totalling $30,118.24 since July 1992. Mr. Winningham, in addition, has received $30,146.21 in temporary total disability payments under Workers' Compensation. Furthermore, Mr. Winningham received $24,066, less $8,022 for attorney's fees, totalling $16,044 for permanent partial disability payments under Workers' Compensation.[11] These amounts are all deductible from Mr. Winningham's verdict under Ohio Rev.Code § 2317.45, as past payments from collateral sources.

Moreover, Mr. Winningham is reasonably likely to receive aid from Ohio Worker's Compensation in the future. In applying the same analysis that we did for social security benefits, we conclude that Mr. Winningham is reasonably likely to receive temporary total disability payments for one year. *See* Ohio Rev.Code § 4123.56(A) (temporary disability payments shall not be made when an employee has returned to work; is capable of returning to his employment; can perform other work; or has reached his maximum medical improvement). Plaintiff's Counsel estimated that if Mr. Winningham were to receive temporary total disability payments for five years, he would be paid $30,066.12. We conclude that Mr. Winningham is reasonably likely to receive $6013.24 over the course of the next year. Therefore, this amount must be deducted from the verdict.

In addition, given the extent of Mr. Winningham's injuries, Mr. Winningham is reasonably likely to receive permanent partial disability benefits. For five years, these payments to Mr. Winningham equal $26,293.00 after attorney's fees. These payments also should be subtracted from the verdict under Ohio Rev.Code § 2317.45.

### Welfare Benefits

The Hamilton County Department of Human Services made total payments of $22,585.23 to Mr. Winningham for medical expenses.[12] Essentially, these payments were "welfare benefits." The Plaintiff argues that this amount is not deductible because these payments are not collateral benefits under Ohio Rev.Code § 2317.45. As noted before, the Ohio legislature defined "collateral benefits" broadly in an effort to reform tort law. The legislature

---

**11.** Ohio Rev.Code § 2317.45(A)(1)(a) provides that the costs, premiums, or charges for any of the disclosed collateral benefits paid or contributed within a three year period immediately preceding the accrual of the cause of action shall be deducted from the collateral benefit adjustment. The Ohio legislature intended to limit adjustments to the net benefit received by the Plaintiff. Therefore, the Plaintiff's attorney's fees must be subtracted in order to arrive at the Plaintiff's net benefit. Thus, Mr. Winningham's attorney's fees to obtain various worker's compensation benefits have been subtracted in determining Mr. Winningham's collateral benefits.

**12.** We note that in the Plaintiff's Response to CAS's Motion for a Hearing, doc. 252, the Plaintiff stated that the payments made by the Hamilton County Department of Human Services totalled $22,581.51. In a later affidavit, however, Plaintiff's Counsel stated that the Hamilton County Department of Human Services paid $22,585.23 for medical expenses. Doc. 257.

The Court has opted for the $22,585.23 figure, because that is the most recent representation to the Court by the Plaintiff.

included in its definition of "collateral benefits," any benefits from:

> [t]he government of the United States, or any state or any political subdivision of any state, under a program that provides medical, hospital, sickness, dental, or other health benefits, including, but not limited to, social security, medicare, and medicaid;

Ohio Rev.Code § 2317.45(A)(1)(a)(ii). Mr. Winningham's welfare benefits were payments from a political subdivision of the State of Ohio for medical benefits.

■ However, these collateral benefits are not subject to a set-off, because they are subject to a right of recoupment. *See* Ohio Rev.Code § 2317.45(B)(2)(a)(ii). In a September 27, 1988 letter to the Ohio Bureau of Workers' Compensation, the Hamilton County Department of Human Services stated the following:

> [t]o date, the Hamilton County Department of Human Services has paid a total of $22,585.23 for medical services rendered to him because of his accident. Obviously, if Mr. Winningham's Worker's Compensation claim is allowed, we would like to be reimbursed for our expenditures.

Affidavit of James B. Helmer, Jr., doc. 257, ex. A. Clearly, the Hamilton County Department of Human Services has asserted a right of recoupment against Mr. Winningham for the $22,585.23 it has sent him. Therefore, these welfare benefits will not be deducted from the jury's verdict.

## CONTRIBUTION

■ Mose Cohen and I. Deutch filed crossclaims against North American Resources. The Ohio legislature has provided that:

> [v]alid answers to interrogatories by a jury or finding by a court sitting without a jury in determining the liability of the several defendants for an injury or wrongful death shall be binding as among such defendants in determining their right of contribution.

Ohio Rev.Code § 2307.32(E). In other words, when a jury apportions fault among joint tortfeasors, the jury's findings are binding upon the defendants' crossclaims for contribution. *Eberly v. A–P Controls, Inc.,* 61 Ohio St.3d 27, 572 N.E.2d 633 (1991). Thus, Mose Cohen's and I. Deutch's crossclaims are binding against NARC.

## CONCLUSION

The Court has made a number of decisions in this Order. First, we have permitted the Plaintiff to file a Supplemental Petition under Ohio Rev.Code § 3929.06. This Court then denied the Defendants' Motion for a Judgment as a Matter of Law. Next, the Court determined that prejudgment interest should be assessed against NARC, but not against the other Defendants. Finally, we considered the deductibility of various collateral benefits under Ohio Rev.Code § 2317.45. The decisions regarding the deduction of collateral benefits and prejudgment interest are reflected below in the Modified Judgment Entry.

## THE MODIFIED JUDGMENT ENTRY

This action came on for trial before the Court, the Honorable S. Arthur Spiegel, District Judge, presiding, and a Jury. The issues in this case have been duly tried and the Jury has rendered its verdict. This Court's prior Judgment Entry (doc. 220) is hereby vacated.

As discussed at length above, in making this Modified Judgment Entry, this Court has made deductions for collateral benefits, pursuant to Ohio Rev.Code § 2317.45. Furthermore, this Court enters this Modified Judgment in keeping with Ohio Rev. Code § 2315.19.

The Court notes first that the Jury apportioned negligence among the Defendants at 16% for Mose Cohen & Sons, Inc. and I. Deutch & Sons, Inc., doing business as Cincinnati Autoshredders, and at 84% for North American Resources Corporation.

Therefore, Judgment is entered in favor of Plaintiff Dale Winningham for his economic damages against all Defendants, Mose Cohen & Sons, Inc. and I. Deutch & Sons, Inc. doing business as Cincinnati Au-

toshredders, and North American Resources, jointly and severally, in the amount of $604,148.91.[13]

Furthermore, Judgment is entered in favor of Plaintiff Dale Winningham for his non-economic damages against Defendants Mose Cohen & Sons, Inc. and I. Deutch & Sons, Inc., doing business as Cincinnati Autoshredders, in the amount of $192,000.[14]

Moreover, Judgment is entered in favor of Plaintiff Dale Winningham for his non-economic damages against Defendant North American Resources Corporation, in the amount of $1,008,000.[15]

Furthermore, Defendants Mose Cohen & Sons, Inc. and I. Deutch & Sons, Inc., doing business as Cincinnati Autoshredders, are entitled to Judgment on their crossclaims for contribution against Defendant North American Resources Corporation for any amounts which Defendants Mose Cohen & Sons, Inc. and I. Deutch & Sons, Inc., doing business as Cincinnati Autoshredders, are held jointly and severally liable to the Plaintiff Dale Winningham, in excess of their apportioned percentage of negligence of 16%, as determined by the jury.

Finally, Defendant North American Resources Corporation is liable for prejudgment interest totalling $276,672.29. This Court did not calculate prejudgment interest on the deductible collateral benefits, the proportionate share of Cincinnati Autoshredders' liability, or the $900,000 settlement by United States Fidelity & Guaranty Company.

SO ORDERED.

---

13. The Court arrived at this amount by taking the economic damages determined by the jury, $725,000, and subtracting the collateral benefits that must be set-off under Ohio Rev.Code § 2317.45. To summarize, the set-off amounts are as follows:

| | |
|---|---|
| Past social security benefits: | $ 9,463.20 |
| Future social security benefits: | $ 2,773.20 |
| Past temporary total disability benefits: | $30,146.21 |
| Future temporary total disability benefits: | $ 6,013.24 |
| Past permanent partial disability benefits: | $16,044.00 |
| Future permanent partial disability benefits: | $26,293.00 |
| Workers' Compensation Benefits: | $30,118.24 |

Added together, the deductible collateral benefits are $120,851.09.

14. The Court arrived at this figure by taking the total non-economic damages of $1,200,000 and multiplying it by 16%, which was the percentage that the jury found Mose Cohen and I. Deutch to be at fault.

15. The Court arrived at this figure by taking the total non-economic damages of $1,200,000 and multiplying it by 84%, which was the percentage that the jury found NARC to be at fault.

The $1,008,000 figure does not account for the $900,000 settlement reached between the Plaintiff and United States Fidelity & Guaranty Company. The Court assumes that the settling parties can determine how their settlement should be implemented in light of this Judgment.